## J. B. BLOOMINGDALE, RESPONDENT, v. B. M. DU RELL & CO., APPELLANTS.

SEVERAL JUDGMENT.—When a plaintiff establishes a cause of action against one or more of the defendants in an action for a tort or on a contract, and it appears in the latter case that the defendants were not joint contractors, or jointly liable, he is entitled to a judgment against those against whom he establishes his cause of action.

ADMISSIONS CONTAINED IN PLEADINGS.—Written admissions of the defendants in their original answer are still admissions tending to establish the facts thus admitted, and are as much evidence to be considered as any other admissions, notwithstanding they were stricken out on defendants' own motion.

RECEIPTING FOR GOODS "IN GOOD ORDER" NOT CONCLUSIVE.—The fact that plaintiff received goods without objection, and receipted for the same as in good order, raises a strong presumption in favor of defendant, but does not amount to an absolute defense to an action to recover for damage to. goods while in the hands of the defendants as common carriers.

APPEAL from the second judicial district, Boise county..

*C. B. Waite,* for the appellant.

*May & McGraw,* for the respondents.

McBRIDE, C. J., delivered the opinion of the court, SMITH, J., and KELLY, J., concurring.

This was an action brought against B. M. Du Rell & Co., who were charged in the complaint to be a firm composed of three defendants, to wit, B. M. Du Rell, William B. Hughes, and Edward Webb, to recover damages for injuries done to goods placed in possession of the defendants, who are alleged to be common carriers, for the purpose of transportation from the town of Umatilla, Oregon, to Idaho City, in the territory of Idaho.

The complaint is in the usual form, and the summons and complaint were duly served on all the defendants. At the February term of the district court, the defendants appeared and answered, denying that one of the defendants, Webb, was a partner in the fast freight line, or had anything to do with the transportation business of Du Rell & Co. They proceed then to deny that the goods were delivered as stated in the complaint, and alleged, for a special defense, that they, to wit, the firm of Du Rell & Co., did receive certain goods of the plaintiff at the time and place charged, for transportation to Idaho City for plaintiff, that the goods were transported to that point, and by the agent of the defendants delivered to the plaintiffs, who receipted for them in good order without objection, and that no damage to said goods was known to defendants at the time of the delivery, or claimed by plaintiffs.

Upon this answer the issue was tried in the court below. It appears, however, that when the case was called for trial, or at some other time, precisely when does not appear, the defendants asked leave to and were permitted to strike out of their answer certain portions which went to explain how the damage done to the goods occurred, and to show that the same was done by the action of the elements, and not by their neglect. No replication to the new matter set up being required by our statute, the case was heard and de-

cided on the issue made in the complaint and answer. The latitude which this practice gives to litigants on a trial is well illustrated in this case, and we think shows the baneful effect of the repeal of that clause of the practice act which provides for a replication in proper cases. Such a pleading in this case would probably have narrowed the issue on the trial to one or two points, whereas the parties now are contending in this court that the issue embraced almost every fact alleged in the complaint.

The testimony showed that the defendants brought on their freight line in the month of November, 1865, which was owned by the defendants, Du Rell and Hughes only, from Umatilla, Oregon, to Idaho City, six thousand five hundred cigars and delivered them to plaintiffs; that when they arrived they were very wet and in anything but a merchantable condition; that they were received by the plaintiffs without objection, and taken away; that as soon as they were opened by plaintiffs, the agent of defendants was notified that they were damaged, and came and examined them. The agent told the plaintiffs that he was informed by the driver on the freight line that the goods had been unloaded in the snow and might have got wet at that time. The agent refused to receive the goods back on the application of the plaintiffs. The course of business at the office of the freight line seems by the testimony to have been for consignors to receipt for their goods in good order on the company's books, or open them in their presence if damaged, or take them away under protest. Proof was also given to show the extent of the damage and the difference between the value of the goods as received and a good article.

The court below—a jury being waived—found a verdict in favor of the plaintiffs for four hundred and fifty-five dollars damages, and rendered a judgment for that amount, and costs, against the defendants, who moved thereupon for arrest of judgment and a new trial, which being overruled the defendants appeal to this court.

The errors assigned are:

1. That this was a joint action against the defendants, Du Rell, Hughes, and Webb, as composing the partnership

firm of Du Rell & Co.; that the jugdment is against Du Rell
and Hughes, and therefore variant from the complaint and
erroneous.

2. That the evidence showing that the goods were re-
ceipted for in good order and carried away by the plaintiffs
without objection precluded them from afterwards claiming
damages, and that the evidence was insufficient to sustain
the findings of the court.

The facts in this case show that the defendants are com-
mon carriers; that they were engaged in the business of
freighting generally between the points named in the com-
plaint, and are subject to all the responsibilities and liabili-
ties of persons engaged in that business.  The legal liability
of the defendants to pay damages, if the facts supported
the complaint, seems not to have been seriously questioned
either in the district court or on the hearing, and this re-
lieves us of any labor in showing the application of the law
of common carriers to the facts of this case.

The first question for decision is the one raised as to par-
ties.  This suit was brought against the defendants, Du
Rell, Hughes, and Webb.  In the answer on file, which is
sworn to by one Brown as agent of the defendants, Webb is
declared to have no interest in the fast freight line, nor in
the partnership which owns it, and the evidence set out in
the statement fully sustains that averment.  This being
shown, the question recurs whether if the plaintiffs show
that the facts set up as to Du Rell, Hughes, and Webb are
true only as to the two first, can they have a judgment in
accordance with the facts as they are developed at the trial?

The rule that joint contractors must be sued at the same
time has its origin in a purpose of the law to protect the
rights of such persons in their relations with each other.  If
all contract together, it is but fair that all should be called
upon for fulfillment of the contract, that the burden may ·
be placed upon them at the same time, that perfect equality
at least of liability may be preserved.

The primary reason for this is, that a joint contract pre-
supposes joint resource for its discharge, and although this
does not affect the personal liability of each one, the equity

of the transaction would imply that they should be first resorted to, and in order that this may be done, the law provides that joint contractors, if known, shall be sued simultaneously, and if the plaintiff fails to join one who is a proper party the defendant may plead it in defense. If in this case the defendant Webb had been a proper party, but the plaintiff had failed to bring him in, the defendants who were brought in might have urged that defense to the action, and compelled the plaintiff to make all the parties with whom he contracted liable, or defeat his recovery against any, and for the good reason that to allow a recovery against two when the burden was by the contract imposed on three, would change the contract and increase the burden of those sued.

But the reason for this rule ceases to apply in a case like the present. If Du Rell and Hughes really made the contract with plaintiffs, and are bound to pay them damages on a proper showing against them, then while a joinder of Webb might well be complained of by him, it could furnish no ground of complaint to these defendants. It would not change their liability nor increase its burdens. They remain as they were before. There is this well-recognized distinction since the code, between the effect of non-joinder of parties defendant, and a misjoinder. While in New York the judges (as in the case of *Bridge* v. *Payson*, referred to in Van Santvoord on Pleading, vol. 1, p. 161) all held that the rule of the common law in case of a nonjoinder of defendants had not been changed by the code, yet it was held that whenever a plaintiff establishes a cause of action against one or more of the defendants in an action for a tort or on contract, and it appears in the latter case that the other defendants were not joint contractors or jointly liable, he is entitled to a judgment against those against whom he established his cause of action; so held in an action upon a joint and several bond executed by the defendants to the people under the excise law (*People* v. *Crane*, 8 How. 151; *Bonstead* v. *Vanderbilt*, 21 Barb. 26), and making a clear distinction between the effect of a nonjoinder and a misjoinder of parties defendant. A defect in

the former would defeat a plaintiff's right to recover, both at common law and under the code; the latter would be fatal at common law, but not so under the code. (Van Santvoord Pl., vol. 1, p. 161.) The case of *Rowe* v. *Chandler*, cited by the appellants in the argument, does not go the length of this case, but the spirit of the reasoning of the learned judge in that case is in entire accord with our own conclusions.

We can not conceive that any hardship would result from this rule. In this case, the defendants made their plea in abatement as to Webb, and had the benefit of a full hearing on the merits of their own defense, and we do not understand that there is any pretense that it would or could have been different on the merits if this suit had been against the appellants alone. Their answer must have been precisely the same, and having once tried their real case on an issue made by themselves, we do not perceive the justice or the legality of granting them the privilege a second time. They, in fact, come into court insisting that they two are the only persons liable, if any liability exists, to plaintiffs, and when the court takes them at their word and tries the case on the showing they make, turn about and complain because judgment is entered in harmony with their own pleading. This is, we think, scarcely accordant with that spirit of justice which the courts should be solicitous always to follow.

3. The next ground of error assigned is that the evidence was insufficient to justify the findings of the court below. This question is to be determined in a great measure by the effect which is to be given to the pleadings. The defendants undoubtedly intended to put the plaintiffs to the proof of all material allegations of the complaint, and yet we think they could scarcely claim so much. They deny that they were partners (as alleged by complaint) in the fast freight line, and yet admit that the defendants, Du Rell and Hughes, against whom judgment is rendered, and who appeal, are partners and owners of said line. They deny that they received the goods mentioned in complaint in the "manner and form" alleged, and yet admit that they

did receive certain goods of about the quality and description alleged, and did undertake to carry the same from Umatilla to Idaho City. They deny the market value of the goods and the charge of negligence, etc.

Under these pleadings, what in fact have the plaintiffs to prove? Not that the defendants, Du Rell and Hughes, are owners of the fast freight line between Umatilla and Idaho City—that fact is admitted; not that the defendants undertook to receive and carry certain goods on their line for the plaintiffs—that is also admitted; not that those goods were carried by defendants to Idaho City, and were wet and in bad condition on arrival—that is not denied, and is therefore admitted.

The defendants then say and admit that they are common carriers; that they undertook to carry the goods; that they did carry and deliver them, and when delivered they were wet and in bad condition. Now, what do those admissions leave for the plaintiffs to prove? Simply the condition in which the goods were delivered to the defendants, and the difference between their value as thus received by them and their value on delivery at Idaho City, in a wet and bad condition. While defendants deny the damage generally, there is no such denial as entitled them to dispute the amount of damages, if any is shown; this we understood the counsel of the appellants to concede in the argument.

Now, what did the plaintiffs prove? They established the value of the goods when received, and proved the difference between that value and the price of an undamaged article. They proved by the defendants' own admissions in their original answer that the goods were damaged in defendants' hands while *in transitu;* that they were unloaded in the snow and were exposed to the action of the elements to such a degree that they were dripping with wet when they arrived. They could not appear in the wet and damaged condition they were in on their delivery to the plaintiffs at Idaho City, if that condition had not resulted from the action of the weather while in defendants' hands. Would not the court or a jury be amply justified in inferring that the damage proved was the result of their having been wet

in the hands of the defendants, when there is no testimony to show that they were exposed at any other time. The only evidence on the point tended to establish this inference, and, as it was all the evidence, the court was bound to adopt the inference or disregard the plain rule of law in civil cases, that the weight of evidence controls the conclusion.

In addition to this testimony, there were the written admissions of the defendants in their original answer, when they undertake to explain the condition of the goods on arrival by saying "that it was owing to the inclemency of the weather, the bad condition of the roads, the necessity of unloading the goods, and their consequent exposure." It will not do to say that these matters of excuse or discharge were struck out of the answer, and should not have been considered. They were still admissions tending to establish that the goods were received in good order and were damaged *in transitu*, and were as much evidence to be considered as any other admissions. It is true that the fact that they were repudiated by the defendants striking them out may show that they were made under a misapprehension; but as the fact of that repudiation, like any other correction of an error in statement, was as fully before the court as the original admission itself, it was a proper matter for the consideration of the judge, and he no doubt reached the right conclusion.

In *Hirschfield* v. *Franklin*, 6 Cal. 607, the defendant made cognovit for the sum of one thousand seven hundred dollars. Afterwards, on a suit brought for the sum, the cognovit having been lost by fire, the defendants' answer denying the cause of action, it was held that the cognovit was good as an admission *in pais*, and that upon such evidence the plaintiff was entitled to recover.

If the defendants had admitted the facts set up in the answer, and afterwards stricken out on their own motion, to a party out of court, the plaintiff could certainly have introduced the witness and proved the statements. And can any good reason be given why the same admissions deliberately made, and yet upon record, though not in the issue, are not just as proper for the consideration of the court

or jury trying the cause, as if they had been shown the court *dehors* the record ?

There is another consideration urged by the defendants which we think has in it much of the elements of a good defense, which is that the goods were received without objection by the plaintiffs, receipted for as in good order, and taken away. Undoubtedly this raises a strong presumption in defendants' favor; still it does not amount to a defense absolutely. In many, and indeed we think in most cases, it would establish the innocence of a common carrier as to the damage complained of; yet it is only a presumption in his favor—only evidence which the complainant must overcome, and which he may meet and explain. In this case it seems to have been fully met by the evidence as to the condition of the goods on arrival, and the fact that immediate notice was given of the injuries and damage complained of, and the further fact that by the course of business at the office of the defendants, parties receiving goods receipted in a book kept for the purpose, which imported in terms that they were in good condition. Failing to do this, they were compelled to open them in the office. This explains why the goods were receipted for in good order by the plaintiff, when they were evidently in a badly damaged condition.

Taking the facts all together, we think the findings of the court below fully sustained by the evidence. We therefore affirm the judgment with costs.