## J. A. STROWBRIDGE, APPELLANT, *v.* THE CITY OF PORTLAND, RESPONDENT.

SEWER IMPROVEMENTS—PROCEEDINGS RELATING TO STREETS DO NOT AP-
PLY.—The common council of the city of Portland, under section 106 of the charter, has power to lay down necessary sewers, and charge their cost to the property directly benefited; and it is not necessary, before proceeding to construct such sewer, that the council shall declare by ordinance that the sewer is necessary, or create a taxing district to be charged with the cost of its construction.

APPEAL from Multnomah County. The facts are stated in the opinion.

·*W. W. Thayer and Sidney Dell,* for appellant:

The common council has made an omission fatal to the assessment, in not having defined and declared the taxing district of the sewer. The complaint shows that the termini of the sewer district are named by the resolution, but the lateral boundaries are not, nor are the lateral boundaries of the latter defined by the law. In ordinary street improvements, the fixing of the termini defines the whole

taxing district, because the lateral boundaries are limited by the charter (section 97) to lots "abutting" on the street, etc. But in case of sewers, the lateral boundaries are not defined by the charter, but that legislative discretion is delegated to the council, indicating the principle of the limit to be the "property directly benefited" (section 106), and excluding the rule for lateral boundaries in other cases. The common council alone has the power, under the charter, to fix the lateral boundaries of the taxing district for the sewer.

That the council has the power to define the district for taxation will hardly be questioned. It may do so under the general right to do everything necessary to the exercise of this delegated power to make sewers; also, under section 78, authorizing it "to determine everything convenient and necessary concerning such improvements." (Burroughs on Taxation, secs. 146, 147; *Hoyt v. E. Saginaw* (1869), 19 Mich. 39; Charter, sec. 106.)

The council can not delegate that power to individuals. It is confined to them. (2 Dillon, M. C., p. 721, n.) The power of the council to pass ordinances to improve streets is legislative, and can not be delegated. (6 N. Y. (2 Seld.) 92.) It can not delegate, unless specially authorized. (56 Ill. 354; 7 Bush Ky. 599, 667; 2 Dillon, M. C., secs. 618, 590, 288, n.; Burroughs on Taxation, secs. 146, 147; Gilm. Ill. 416.) The legislature may define how large the taxable community may be, whether state, county, ward, etc. (58 Pa. St. 320; 104 Mass. 236.)

Defining the taxing district by the council is a fundamental act. Without it, the assessment and all subsequent proceedings are void.

On the Charter. Section 106 declares that when [after] the council shall direct the same [expense] to be assessed on the property directly benefited, "such expense shall in every other respect [*i. e.*, other than the limit of the district and mode of apportionment] be assessed and collected in the same manner as is provided in case of street improvement." And section 79 provides for ten days' "notice thereof by publication." This notice stands in the place of process in

proceedings. (*Scammon* v. *Chicago*, 40 Ill. 146.) And it is plain that no process could be served or issued unless the parties or the property to be affected were ascertained with convenient certainty; in a word, unless the taxing district were previously defined and declared. *A fortiori*, notice could not be given where it was not known who were intended to be affected. Notice, then, is a fundamental act, the absence of which voids the assessment. (6 Or. 395.) And as the notice would be void for uncertainty in the absence of a declaration, "by the law or charter," of the property and persons proposed to be affected, it follows that the defining of the taxing district prior to notice is absolutely essential and fundamental. Also, to make a remonstrance possible, under section 81. Also section 80, "must specify," etc., taken with section 106, is an express direction to define it.

On principle and authority. This proceeding is the creation of a lien against the will of the lot owner, and since, as we have shown, no one but the council can define the district to be taxed, it is plainly essential to the claim of lien by the council, that it should specify what property it proposed to affect by the lien; just as in any other statutory lien the property proposed to be affected must be described in the original notice of lien, with sufficient certainty, or else it is void. The obtaining of this lien is the sole purpose of this proceeding; and the defining of the district to be taxed for the proposed improvement is the first necessary step. No more particularity of description of the lien is then required, because it only then affects the general rights of notice and remonstrance. It is a fundamental right of the property owner to have all the property in the taxing district assessed, and when a lot is omitted the assessment is void (51 Cal. 15); therefore, it is essential to this right that the district should be declared. Making sewer does not give the lien, but a strict compliance with the statute does. "Municipal liens rest upon the law alone" (79 Pa. St. 272), and "the power to assess the cost of improvement as a lien can not arise from benefit to the abutting owner."

Jurisdiction to create lien is acquired step by step (61

Barb. 469), and everything having the semblance (52 Mo. 133) of benefit to the owner must be complied with before lien is acquired or liability accrues by building the sewer." (48 N. Y. 496; 6 Or. 66.) The result of the decisions as stated by Mr. Cooley (Con. Lim. 494, 502) is that a tax must be uniform throughout the taxing district. A state tax is to be apportioned through the state; a county tax through the county; a city tax through a city. If the rule of apportionment is uniform throughout the taxing district the constitutional provision is not violated. (52 Cal. 20.) And this is also a principle of general law that taxation or assessment shall be equal and uniform. An assessment is in the nature of a tax and implies ratio. (29 Mich. 504.) Every requirement of the charter must be strictly pursued unless so purely formal as in no way to bear upon the protection or the right of the parties to be affected.

The declaration of intention to construct the sewer and defining the boundaries of the sewer district must be by ordinance. Compare the following sections of the city charter, to wit: 39; 38, par. 26; 78; 80; 101; and 106 adopts the old act. (27 Cal. 630.)

The "probable cost" must be assessed prior to the construction of the sewer; which has not been done. (City Charter, secs. 82, 84, 85, 102; 2 Dillon M. C., secs. 605, 610, 654; 2 Or. 81.) After one assessment, no power to order another. Hence mode prescribed must be pursued. Previous assessment is notice of the particular property on which lien is claimed and amount.

The next step is the ordinance declaring the time and manner of doing the work. It delegates a discretion to the committee on streets and is void. It provides for a sewer of ten, twelve and fifteen-inch pipe, and adds, "with catch-water basins, man-holes, lamp-holes, sockets, and branches at such points as the committee on streets and public property may designate." (2 Dillon M. C., sec. 618, citing 56 Ill. 354; 1 Id., sec. 60, citing 6 N. Y. (2 Seld.) 92.) City Charter, sec. 101: "Council must provide." (9 Barb. 152; 43 Mo. 359; 46 Id. 100; 52 Id. 133; 50 Ill. 28; 2 Dillon M. C., 605, n. 2: "Liable to abuses;" 56 Ill. 354; 60 Ill. 441, 572.)

This delegation is the door of fraud. Assessment void, because no time nor manner of giving notice of letting the contract was fixed by ordinance or otherwise, and nothing to declare what a "proper notice" was. This was a discretion imposed on the common council to decide and determine, and failing to do so, there was no legal notice. The charter, sec. 101, requires the council to accept or reject the bid, and vests in that body a discretion as to bids by lot owners. But the council never acted on the bid, and, therefore, the contract is void.

Omission of street railway property and Corbett's four lots voids the assessment. Street railway liable to assessment. (32 Cal. 409, 499; 38 Conn. 42; 10 Ohio St. 159, 164; 12 Iowa, 112; 60 Ill. 441.) If one lot is left out of the assessment, it violates the rule of uniformity and ratability, and it is void. (51 Cal. 15; 31 Id. 241; 32 Id. 409, 499; *Upington* v. *Oviatt*, 24 Ohio St.)

The proviso to section 106 of the city charter does not authorize the council to delegate its power of *assessment* to three disinterested persons. It only authorizes them " to estimate and determine "—not to assess—" the proportionate share of the cost of the sewer " that ought " to be assessed "—not to the lots or parts of lots, but " to the several owners of the property " which has already been declared by the council to be "benefited thereby." (40 Ind. 235.) Assessment should show the amount each lot is liable for, though there are different owners. It requires the most explicit language to authorize council to delegate its power. (6 N. Y. 92.) The proviso certainly does not authorize the three to define and declare the taxing district; nor to declare what property in that district is directly benefited; nor to estimate and determine what the whole cost of the sewer is or may be; nor to apportion it among the several lots and parts of lots, according to the ratio of benefits. But it assumes all these to have already been done, at the time the three are appointed.

The law requires (sec. 106) the assessment to be in the ratio of direct benefits, and not in the ratio of cash value.

The true rule is the direct increase in the market value, which in this case is shown by the bill to be equal for each lot in proportion to its superficial area; and that by cash value is not according to benefits. (Burroughs on Taxation, sec. 148, p. 472.) City charter, sec. 106, prohibits cash value as mode. (2 Dillon M. C., p. 693, sec. 596 n.) If for benefits, "frontage not sufficient, and the report of commissioners must show it was on right basis." (36 Conn. ·66; 20 N. J. L. 104, 115.) "Cash value without improvements" wrong discrimination. (2 D. M. C. sec. 620, citing 4 Scam. Ill. 78; 35 Mich. 159; 51 Cal. 15; 32 Id. 499.) "Just and equal" means "benefits." May be by frontage benefits or superficial contents. (28 Cal. 325; 2 Brod. & B. 691, 10 Coke, 143 a.) "Assessment for sewers ought to be according to quantity of their land, tenants, and rents and by acres and perches according to rate of every man's portion, tenure or profit, or by the quantity of the common or pasture or of fishing or other commodity." Primarily by "acre;" if other interests, by rents, etc. Per acre good. (2 Strange, 1127; 2 Maule & S.; 3 Barn. & Ald. 21.)

By superficial area held good in 48 Miss. 367; 38 Id. 652; 27 Id. 458; 21 Ark. 40; 14 La. 498; in which last case it is intimated that as it costs as much to protect one acre of land from overflow as it does to protect another, the apportionment not unjust. Also 27 Mo. 497; 36 Id. 456. Equity has jurisdiction to set aside the assessment. (2 Or. 146; 17 Wend. 660, 668.)

Equity, where the assessment is void, will not refuse to set it aside on the maxim that "he who asks equity must do equity," because the defendants have no equity to be done. If they have acquired no lien, then they have no rights, but their proceedings constitute an illegal cloud which plaintiffs have a right to remove. (*Upington* v. *Oviatt*, 4 Ohio St.; *M. Steese* v. *Oviatt*, 24 Ohio St.) The defendant had a right and equity because, notwithstanding defects, it could recover a *quantum velebat*, and it did not appear but what the amount assessed was reasonably worth it.

*J. C. Moreland, City Attorney, and J. H. Reed,* for respondent:

The authority relied on by the respondent is found in the charter:

"Sec. 106. The council shall have power to lay down all necessary sewers and drains, and cause the same to be assessed on the property directly benefited by such drain or sewer, but the mode of apportioning estimated costs of improvement of streets prescribed in sections ninety-seven and ninety-eight of chapter eight of this act shall not apply to the construction of such sewers or drains; and when the council shall direct the same to be assessed on the property directly benefited, such expense shall in every other respect be assessed and collected in the same manner as is provided in case of street improvement; *provided,* that the council may, at its discretion, appoint three disinterested persons to estimate and determine the proportionate share of the cost of such sewer or drain to be assessed to the several owners of the property benefited thereby."

The complainants allege that the council ought to have first established what their attorney is pleased to term a "sewer district." But there is no authority whatever for such a proceeding. The council, in this case, caused a notice to be published—and in the notice it was stated that certain property would be assessed. This was a matter purely *ex gratia,* and can not affect this cause. They were under no obligation to give any notice, or publish any resolution. Their authority is found in the section quoted, and there is certainly nothing in that which requires the council to give a notice, or establish anything which could be called a sewer district. They have the power to appoint three disinterested persons to establish and determine the proportionate share of the cost of such sewer to be assessed to the several owners of the property benefited thereby. This was done, their report was adopted by the common council by ordinance; and we insist that their action in this matter is final, and will not be set aside, or revised by a

court of equity, except for fraud, accident, or mistake, and neither of these is alleged.

As was said by Judge Cooley, in a similar case: " So long as the common council keeps within the limits of its jurisdiction, as defined by the constitution and statutes of the state, and its members are guilty of no intentional wrong or corrupt conduct in the discharge of their official duties, the courts have no power to control the exercise of their legal discretion, or to overrule and set aside their judgment; but must accept their conclusions as warranted by the facts, and as binding alike upon the city and upon all of its inhabitants." (*Motz* v. *Detroit*, 18 Mich. 516. This was cited and approved in 43 Ind. 197.)

Acting within the scope of their jurisdiction, the findings of the common council can not be impeached, except for fraud. Their discretionary power is not subject to review. (Charter, sec. 139; 48 Ill. 285, 293, 296; 2 Or. 298; Dillon on Mun. Corp., secs. 58–476; High on Injunctions, sec. 785; Cooley on Taxation, sec. 528; 32 Barb. 410; 4 Johns. Ch. 344–353; 6 Johns. 28; 25 N. Y. 312; 46 Id. 109; 48 N. Y. 518.)

The allegation that there is property along the line of the street which is benefited will not render the tax void. The case upon which counsel founds his argument upon this point (51 Cal. 15) contains a complete refutation of his position. (See 22 Ill. 311.)

We admit the rule that the burden of taxation must be uniform. This is a constitutional provision. and must be observed, but it must be enforced with a view to give the constitution a practical operation. As was truly said in 10 Wis. 242 (quoted with approval in 51 Cal.), "when mere mistakes occur on the part of officers who are endeavoring, in good faith, to discharge their duties, this ought not to invalidate the whole levy." And we respectfully submit that any different view would render nugatory the whole taxing power. But this matter of the benefit to property not included in the assessment, as alleged by complainants, is simply a difference of opinion between the viewers and

·the appellants, and certainly a court will not undertake to settle such difference. (60 Ill. 441.)

Appellants claim that the council ought to have ascertained and declared the probable cost of the sewer as is provided in sections eighty-four and eighty-five of the charter in case of street improvements. To this we answer: 1. Those sections do not and can not apply to the construction of a sewer. Section one hundred and six, we insist, furnishes the only rule, and if so, there is no such thing as declaring the probable cost before a contract is let. 2. Sections eighty-four and eighty-five are merely directory and are not mandatory, and the failure of the council to take this step certainly would not invalidate this levy and render the whole assessment void. The omission to take this step injures no one. There is no failure of jurisdiction, and·the same presumption at least ought to attach to the proceedings of the common council as attaches to courts of inferior jurisdiction; *i. e.*, that when once a jurisdiction is established all steps that ought to have been taken are conclusively presumed to have been taken. It will be further seen that in sections eighty-four and eighty-five the words "probable cost" are used, while in section one hundred and six, in speaking of sewers, the words "proportionate share of the cost" are used. It would involve an absurdity to say that the council should estimate the "probable cost," and afterward, when the work was done, appoint three disinterested persons " to estimate and determine the proportionate share of the cost" to each owner benefited. Section one hundred and six must stand alone in that regard.

The allegation in their complaint, that the sewer is a benefit to Yamhill street, constitutes no objection to this assessment. The city has no property in the street. . The fee is owned by the adjoining lot owners, subject only to the rights of the public to use as a highway. (See 84 Ill. 227; *Bigelow* v. *Chicago,* Chicago Legal News, Jan. 1879.) But the main objection to the assessment, and the one which was uppermost in the minds of the complainants in seeking this injunction, is the mode adopted by the viewers in making their assessment. As alleged in the complaint they adopted the

mode of apportioning according to the value of the property, irrespective of the improvements, making some allowance for the distance of the property from the sewer. We submit that this was correct. The method of making the assessment is not defined by the charter except that it must be on the property benefited. The mode is left to the discretion of the council, and under section one hundred and thirty-nine of the charter, this discretion when once exercised can not be called in question elsewhere.

The appellants maintain that the proper manner of making this assessment was the superficial area, but if we examine section one hundred and six we find that sections ninety-seven and ninety-eight do not apply to the construction of sewers and drains, and section ninety-seven provides that the cost of a street improvement is made upon the basis of a superficial area. Judge Dillon, in section six hundred and forty-five of his authoritative work on municipal corporations, says: "The apportionment" for building a sewer "should be made upon the value of the land independently of the buildings and should be settled at the time of the transaction." (9 Cush. 233; 35 Mich. 155; 35 Conn. 66; 7 Cush. 200; Burroughs on Taxation, secs. 147, 148; 38 N. J. L. 171, 190.)

Courts of equity will not grant relief when there is a plain, speedy, and adequate remedy at law. If the allegations of plaintiffs' complaint be true they have this remedy at law. They had a complete remedy under our writ of review. "If the power to levy the tax exist, and the property be subject to taxation, mere errors and irregularities should, according to the better considered view, be corrected on certiorari or other appropriate proceedings, or their effect left to be tested at law." (Dillon on Mun. Corp., sec. 737; 5 Wallace, 413–419; 14 N. Y. 534.)

An injunction will not lie to restrain the collection of a tax, unless there are some special equities to render the tax unjust and illegal. (High on Inj. 785.) As to the allegation of cloud upon title, respondents say that if the proceedings are void upon their face, and need no extrinsic evidence to establish such invalidity, they can not cast any cloud upon

their title. (1 Deady, 491; 5 Wallace, 418; 14 N. Y. 534, 541, 542; 47 Mo. 479; 26 Wend. 131; Dillon on Mun. Corp., sec. 476; 9 Paige, 16, 388.) "Courts of equity will not interfere where the act complained of in levying the tax was done according to the best judgment of the assessors, fairly and impartially." (4 Johns. 353, 354: 1 Cal. 455.)

There are no equities in the complaint. This was the principal ground upon which the court below decided this cause for the respondents. In passing upon this point the court said: "The general and well-established doctrine is, that when property is subject to taxation, and the tax is a legal one, equity will not interfere simply because there are irregularities in the assessment. Thus Mr. Dillon says: 'When the defect complained of is merely formal, not impeaching the justice of the tax or assessment, and the plaintiff ought to pay the amount, equity will not interfere, but leave him to his legal remedies.' A large number of cases are cited as sustaining the doctrine." (Dillon on Mun. Corp., sec. 738.)

"In Indiana it is held that where the owner of real estate in a city stands by and sees a street improved adjoining his property, on a contract made under an order of the common council, without attempting by injunction to prevent such improvement, he can not, after the work is completed, or nearly completed, refuse to pay for it. In Michigan, this view of the estoppel of the property owner is taken. In Kansas, it is decided that courts of equity will not interfere to restrain by injunction the collection of taxes, when the property is subject to taxation, the tax legal, and the valuation not excessive, simply because of irregularities in the assessment. There must be a tender of what is equitably due. These are citations from Mr. Dillon's note to the section quoted, and the author adds that the same view is substantially taken by the supreme court of Missouri."

"Who seeks relief from an over-assessment must pay what is justly due. So one who sought to have an invalid tax deed set aside as a cloud on title, he having been in default in not paying his taxes, was relieved only on paying all taxes paid by the holder of the deed. (Story's Equity Jur., sec.

63, note.) These are citations from Mr. Story to illustrate the doctrine of the maxim, ' He who seeks equity must do equity.' "

" In 24 Ohio State Reports, the same principle is applied in a case much like this. In that case a suit by injunction was brought to enjoin the collection of an assessment upon certain lots in the city of Akron, made by authority of the city council, to pay the expense of grading and paving a street. The statute required an advertisement for bids for the work to be published four weeks in two of the news-papers in the city. The court said that this provision was intended for the protection of the tax-payers, to secure com-petition among contractors, and prevent favoritism and fraud, and that it must be regarded as peremptory; that not having been complied with, the defect was substantial; that it went to the legality of the contract and of the subsequent assessment. The contract having, however, been let and the work done, it was held that equity would not interfere so long as the amount charged upon the lots was no more than the reasonable value of the work ratably chargeable upon such lots; that it would only interfere if the assessment was more than was properly chargeable upon the property, and then only to the extent of granting relief against the collection of the excess." (24 Ohio St. 246.)

"As already stated, it is expressly admitted in the peti-tion in this case that these lots ' are all within one hundred feet of Yamhill street;' that they ' all lie along the line of said sewer, and are directly benefited ' by it, and it is ad-mitted also that the lots directly benefited are legally charge-able with the cost of the sewer." " The case is thus clearly within the well-established rule laid down by the authorities cited. The alleged irregularity of the assessment affords no ground for the interference asked for. If the lots of the petitioners are assessed more that their ratable proportion, the court will not, for that reason, relieve the petitioners from payment of their ratable proportion." " They must show a willingness to pay what is due *ex æquo et bono* before this court will interpose in their behalf. This they refuse to do. They ask to be relieved from all liability on account

of work which they admit is for their benefit, and for which they admit their lots are equally chargeable. If it is true, as claimed by counsel for petitioners, that it is threatened to enforce against them a pretended right or lien, which, by reason of the irregularities complained of, does not exist in law, their rights against such threatened attempt are legal rights, which will only be enforced in courts of equity when they rest upon equitable grounds." (See Dillon, sec. 737; Cooley on Taxation, 540; 1 Dan. Ch. Pr. 385, 386.)

These complainants come before this court of equity saying that their property has been benefited; that the city had authority to make the assessment, and yet asking that they may be relieved from all liability. There is nowhere in this charter any power or authority to make a reassessment. If this tax be declared void, either the contractor who constructed the sewer, or the city, must suffer the loss, while these complainants will reap the benefits. If courts of equity are created for the purpose of enforcing such an inequitable decree as this would be, then the ideas prevalent in regard to such courts need reconstruction.

By the Court, BOISE, J.:

This is a proceeding by injunction to restrain the defendants in the collection of certain assessments for the construction of a sewer in Yamhill street, in the city of Portland, and to declare such assessments illegal and void.

The petition alleges in substance that on the twenty-seventh day of June, 1878, the common council of the city of Portland passed a resolution to the effect that notice be given that the council propose to construct a sewer in Yamhill street within specified points and of specified dimensions; "the expense thereof to be assessed upon the property benefited."

That on the sixth day of July following, a notice of the proposed sewer improvement was published in the Daily Standard newspaper, daily, from ten days from said date. This notice concluded as follows: "The expense thereof (of the sewer construction) to be assessed upon the property benefited thereby. It is hereby understood that the

property benefited will include all lots or parts of lots lying within one hundred feet of Yamhill street on either side thereof, and between Front street and the termination thereof."

That within ten days from the publication of this notice a written remonstrance against the proposed improvement was made and filed by the owners of two thirds in value, but not quite two thirds in area, of all the property adjacent to that part of Yamhill street described in the notice.

That on the twenty-second day of August, 1878, an ordinance, numbered 2246, was passed, "providing for the time and manner of improving Yamhill street from the Willamette river to a point one hundred feet west of the west line of Tenth street by putting in a sewer at the expense of the property benefited." This ordinance specified particularly the character of the improvement to be made; that it should be done to the satisfaction of the committee on streets and public property and the superintendent of streets. The ordinance authorized such committee to advertise for and receive proposals for the work, and to enter into a contract with the lowest responsible bidder or bidders therefor. It further provided that the expense of the sewer should be assessed to the property directly benefited thereby.

The petition further alleges in effect that on the fourteenth day of September, 1878, a notice to contractors for sealed proposals for the construction of this sewer was published in the Daily Bee, as provided in the ordinance, and thereafter the committee entered into a contract for such construction, and that such sewer was constructed prior to December 1, 1878.

That on the fourth day of December the council by a resolution appointed Burrage, Holmes, and Norris to assess the cost of the construction of the sewer, as provided by ordinance 2246, to the several lots and parts of lots benefited thereby.

That these commissioners found the probable cost of the sewer to be five thousand nine hundred and ninety-nine

dollars and fifty-four cents; that the property benefited consisted of all lots and parts of lots lying within one hundred feet of Yamhill street and between the Willamette river and a point one hundred feet west of the west line of Tenth street; and that the commissioners made report that they had "apportioned the estimated cost of said sewer to the several lots and parts of lots and assessed the benefits to be derived therefrom as follows:" (Here follows a table showing the number of each block, the number of each lot or part of lot, the name of the owner and the benefits assessed.)

It is further alleged that an ordinance was passed, declaring the probable cost of the sewer, and assessing the same to the property benefited, according to the report of the commissioners, and directing an entry of the assessment on the docket of city liens, and that notice of this assessment was duly given.

The petitioners allege as grounds of complaint that the probable cost of the sewer was not ascertained and determined, or apportionment or an assessment thereof made to the different lots by ordinance prior to the construction of the sewer; that the council did not defend the taxing district of the sewer; that the commissioners did not apportion the cost of the sewer to the property directly benefited in the rates of benefits accruing; that they adopted the mode of apportioning according to the proportion which the cash value of the lots bore to each other, making allowance for the distance of the lots from the sewer; that the lots are of unequal value in proportion to their area; that Yamhill street is the property of the city of Portland, and that a proportionate cost of the sewer should have been assessed to such street against the city; that certain lots have not been assessed as the names of the owners.

It was argued by counsel that the powers exercised by the commissioners in apportioning the benefits and cost of the improvement could only be exercised by the council.

The petitioners admit that their lots are within one hundred feet of Yamhill street; that they lie along the line of the sewer, and are directly benefited thereby.

The defendants demur to the petition upon the grounds that the court has not jurisdiction, and that the petition does not state facts entitling the petitioners to the relief prayed for.

It is urged that the proceedings establishing this sewer, so far as the same seek to impose a tax on the property of the petitioners, are void, and that the collection of the tax can not be enforced, and that the tax is illegal and not a just lien on the property of the petitioners. Petitioners claim that in order to legally establish the right by the city to construct a sewer, the city council should first declare by ordinance that the sewer is necessary, and describe its location and define the district that is to be benefited and charged with the cost of its construction.

The decision of these questions involves the construction of section 106 of the charter of the city of Portland, which is as follows: "The council shall have power to lay down all necessary sewers and drains, and cause the same to be assessed on the property directly benefited by such drain or sewer, but the mode of apportioning estimated costs of improvements of streets prescribed in sections 97 and 98 of chapter 7 of this act shall not apply to the construction of sewers or drains; and when the council shall direct the same to be assessed on the property directly benefited, such expense shall in every other aspect be assessed and collected in the same manner as is provided in case of street improvements; provided, that the council may, at its discretion, appoint three disinterested persons to estimate and determine the proportionate share of the cost of such sewer or drain to be assessed to the several owners of the property benefited thereby."

This is the only section of the charter providing for or regulating the construction of sewers. It provides that sections 97 and 98 of the charter, providing what lots shall be taxed with street improvements, and in what proportion the assessment shall be made on each, shall not apply to the construction of drains and sewers. These sections provide that the assessment for street improvements shall be proportioned to superficial area of the adjoining lots, so

that the provision in section 106, that these sections shall not apply to the construction of sewers, plainly indicated that a different rule was intended to be established in apportioning the cost of sewers to those directly benefited. The proviso at the end of section 106 directs the manner in which the cost of construction of sewers shall be ascertained and apportioned. The provision in section 106, that when the council shall direct the "expense of construction to be assessed on the property directly benefited, such expense shall in every other respect be assessed and collected in the same manner as is provided in case of street improvements," simply adopts the means of enforcing against those directly benefited the collection of the tax apportioned to them by the estimate made by the disinterested persons appointed to make the apportionment in pursuance of the provisions of section 106. The mode of inferring these charges on the property benefited is provided for in sections 85, 86, and 87.

The elaborate manner pointed out in the charter for acquiring the authority to construct street improvements, does not apply to the construction of sewers. The latter may be laid when in the judgment of the city council the same shall be necessary. They may be made without previous notice, the council alone being the judge of their necessity. Sewers are required as a part of the sanitary regulations of the city, to prevent the development of local disorders, and generally to preserve the public health. It may, and often does, happen in populous towns, that active measures have to be taken by city authorities in sanitary measures, and it would not be wise to leave so important a power, often requiring the most prompt exercise, to the tardy mode provided for inaugurating street improvements. Section 106 alone provides for the manner of making drains and sewers. The only question is, Has the city council properly exercised its powers under such section?

It is claimed by the counsel for appellant that the council should have first declared by ordinance that a sewer was necessary. Such an ordinance was not essential to give them power to construct the sewer. The charter does not

require such an ordinance as preliminary to their proceeding to construct the sewer. No public good would be accomplished by such declaration. When they passed the resolution to construct the sewer, and located its termini, that action showed that in the opinion of the council it was necessary. It is also urged by the appellant that the resolution did not fix the lateral bounds of the district to be charged with the cost of construction.

From what has been said, it follows that the council had power to proceed and lay down the sewer, and then ascertain, by the method provided in the proviso of section 106, what property was directly benefited. So there is nothing in this objection. The proceedings of the council, as set out in the complaint, show that the same are a substantial compliance with the provisions of the charter providing for the construction of sewers. The view we take of section 106 of the charter renders it unnecessary to notice any other points which were discussed in the argument.

The decree of the circuit court will be affirmed.