[Filed July 2, 1888.]

## JOHAN PAULSON ET AL., RESPONDENTS, *v.* CITY OF PORTLAND ET AL., APPELLANTS.

SEWERS—COLLECTION OF ASSESSMENTS. — Where the common council of the city of Portland, by ordinances duly adopted, caused a certain sewer in the north part of the city known as Tanner Creek Sewer to be constructed at a cost of over thirty-five thousand dollars, which it directed to be assessed on property it declared to be directly benefited thereby under the authority contained in section 121 of the city charter, *providing,* "that the common council of the city shall have power to lay down all necessary sewers and drains, and cause the same to be assessed on the property directly benefited by such sewer or drain, and to estimate the proportionate share of cost thereof to be assessed to the several owners so benefited." *Held,* in a suit brought by a number of the owners of the property to enjoin the collection of the assessments, upon the grounds of the charter not requiring notice of the proposed construction of such works to be given, and of the assessment having been arbitrarily levied, without regard to the value of the benefits conferred by the improvement, that such owners were properly united as plaintiffs in the suit, if such ordinances were void. That although the interests of such owners were distinct, that they differed in extent, and were not similarly affected, yet the cause being common to them all, and each having the same character of remedy, they had a sufficient community of interest to entitle them to join as such plaintiffs. *Held,* however, following the decision of this court in *Strowbridge* v. *City of Portland,* 8 Or. 67, which the court under the particular circumstances of this case regards itself as bound to do, that the failure of the charter to require such notice to be given does not render section 121 void; nor do the proceedings had under it have the effect to deprive such owners of their property "without due process of law." *Held,* that where a question has been decided by this court, and parties, relying upon the decision as a settled rule of law, have transacted important affairs which would be seriously affected by a change of the rule, the court will adhere to it in subsequent cases, however it might be inclined to hold if the question were *res integra.* *Held,* that the assessment of a proportionate share of the cost of a local improvement by the officers of a municipal corporation, upon parties specially benefited thereby, cannot be made in excess of the value of the benefit conferred; but where the improvement directly benefits the property of such parties, the question of the extent of the value thereof must be determined by the proper officers of the corporation. The courts will not interfere in such a case, unless the property assessed is so situated as to render it physically impossible for the improvement to benefit it; or where the mode of levying the assessment excludes the consideration of the question of value of the improvements. *Held,* that as said section 121 of the city charter of the city of Portland only empowers the common council of the city to lay down *necessary* sewers and drains, it is a limitation upon the power of the council to establish the same, unless the benefits to the property accommodated thereby will be equal to or in excess of the cost of their construction. *Held,* that where an assessment is levied upon property for a share of the cost of a local improvement, which is so situated that it cannot possibly be benefited thereby, the owner of the property may maintain a suit to prevent the enforcement of the assessment; but that different owners of distinct parcels of property so assessed have no right to join as plaintiffs in such suit.

APPEAL from a decree of the Circuit Court for the county of Multnomah.

*Williams & Wood,* and *L. B. Linthicum,* for Respondents.

*W. H. Adams,* and *Mitchell, McDougall, Tanner & Bower,* for Appellants.

THAYER, J.—The respondents, consisting of about two hundred persons, brought a suit in said Circuit Court to enjoin the collection of an assessment for the construction of a sewer in the north part of the city of Portland, known as Tanner Creek Sewer. The common council of said city, on the fifth day of March, 1887, passed an ordinance known as ordinance No. 5088, providing for the construction of the said sewer. The termini and course the sewer was to be laid were specified in the ordinance; the territorial district to be drained and sewered was defined therein, and the lots and blocks within such district which were declared to be benefited and subject to assessment on account of such sewer were named.

The said ordinance also contained the following provisions: "That R. L. Durham, Charles G. Schramn, and H. W. Monnastes, disinterested persons, be, and they are hereby appointed, viewers to estimate the proportionate share of the cost of said sewer, to be assessed to the several owners of property benefited thereby, in accordance with the provisions of section 121 of the charter of said city, and report the same to the common council within sixty days from the date of the approval of this ordinance by the mayor. Said viewers shall hold stated meetings in the office of the auditor and clerk of said city, and all persons interested may appear before said viewers, and be heard in the matter of making said estimate."

The said viewers, in pursuance of the said provision contained in said ordinance, made and filed their report on the third day of July, 1887, and the said common council thereupon passed an ordinance known as ordinance No. 6162, approved August 19, 1887, by which they adopted the said report of the viewers, and directed the auditor and clerk to enter a statement of said

assessments in the docket of city liens, and that on the twenty-second day of November, 1887, warrants were issued for the collection thereof, in pursuance of which the chief of police of said city was, at the time of the commencement of the suit, attempting to collect said assessments. The respondents, who are owners in severalty of certain lots and parcels of land within said district which are respectively charged with a portion of said assessments, seek to have the statement entered in the docket of city liens set aside and canceled, and the proceedings to enforce the assessments perpetually enjoined.

The grounds upon which they claim such relief, as shown by their complaint filed in the suit, are, that said section 121 of the charter of said city of Portland, under which the said viewers were required to estimate the proportionate share of the cost of said sewer, to be assessed to the several owners of the property benefited thereby, is unconstitutional and void; that said ordinance No. 5068 is unconstitutional and void; and that the property assessed was not directly benefited by said sewer.

Said section 121 of the city charter provides "that the council shall have the power to lay down all necessary sewers and drains, and cause the same to be assessed on the property directly benefited by such drain or sewer; but that the mode of apportioning estimated costs of improvement of streets, prescribed in sections 112 and 113 of the charter, shall not apply to the construction of such sewers and drains; and that when the council shall direct the same to be assessed on the property directly benefited, such expense shall, in every other respect, be assessed in the same manner as is provided in the case of street improvements; *provided,* that the council may, at its discretion, appoint three disinterested persons to estimate the proportionate share of the cost of such sewer or drain, to be assessed to the several owners of the property benefited thereby, and in the construction of any sewer or drain, the city shall have the right to use and divert from their natural course any and all creeks or streams running through the city into such sewer or drain."

Neither said section 121, nor any other section or clause of the city charter, requires any notice to be given to the owner of

lots or blocks assessed, with a share of the cost of such sewer or drain of the proposed construction thereof. The common council is empowered to lay down such sewers and drains, and assess the cost thereof on the property directly benefited thereby upon its own motion. It is upon this ground that the respondents claim the said ordinances to be unconstitutional, which is the main question in the case.

The appellants interposed a demurrer to the respondents' complaint upon the grounds: (1) That there was a misjoinder of parties plaintiff, in that, to wit, there were numerous persons, owning separate and distinct parcels of land not similarly situated, nor similarly affected by the matter alleged in the complaint, and not having any unity of interest in the subject of the suit or the relief demanded, joined as plaintiffs. (2) That there was a defect of parties in that, to wit, there was no such unity of interest among the said plaintiffs in the subject of the suit, or the relief demanded therein, as entitled them to be so joined. (3) That said complaint did not state facts sufficient to constitute a cause of suit. The Circuit Court overruled the demurrer, and the appellants failing to answer over granted a decree for the relief prayed in the complaint. The demurrer to the complaint for misjoinder of plaintiffs and defect of parties did not specify the proper grounds of objection. Misjoinder of parties is no ground of objection by demurrer, and it did not appear from the face of the complaint that there was a defect of parties.

The objection which the appellants' counsel aimed to raise was, that several causes of suit had been improperly united. But I do not think a demurrer would lie upon that ground if the ordinance levying the assessment was void. The plaintiffs' interests were, it is true, distinct and differed in extent, and very likely were not similarly affected; but the cause was common to them all, and their respective remedies for redress or prevention were the same. The case would be analogous to that of a nuisance affecting several owners of real property, where it is a common injury to them all, and they each have the same character of remedy to abate it. I think that in all cases where parties are threatened with injury from one wrong, they have a

sufficient community of interest to entitle them to unite as plaint-
iffs in a suit to prevent it, although their interests are distinct
and affected to a different extent. Such a rule should be main-
tained in order to prevent a multiplicity of suits, and is now, as
shown by the authorities cited by the respondents' counsel, well
established.

The respondents' counsel contend that said ordinances and
proceedings had thereon are unconstitutional, for the reason that
the plaintiffs in the suit are arbitrarily declared benefited, without
any notice or opportunity to them to be heard on that point, or
as to the amount of the assessment; and that the effect thereof is
to deprive them of their property without *due process of law*,
which the counsel insist is contrary to the fourteenth amend-
ment of the Constitution of the United States. Said amendment
since its adoption has been so often referred to by counsel in
support of personal and property rights, and been given such
prominence by courts in adjudicating upon them, as to leave the
inference that it was a *bran new* principle in the law. The bar
and bench seem to have forgotten that it was a part of ancient
English liberties, confirmed by Magna Charta on the nineteenth
day of June, 1215, which came to the people of the United
States as a part of the common law. Chapter 29 of Magna
Charta declares that "no free man shall be taken or imprisoned,
disseised from his freehold or liberties or immunities, nor out-
lawed, nor exiled, nor in any manner destroyed, nor will we
come upon him or send against him, except by legal judgment
of his peers, or the law of the land."

This provision has been a fundamental rule in the judicial
system of every State in the Union which has adopted the
common law; and to deprive a person of his property except by
"due process of law," or "by the law of the land," which means
the same thing, would be illegal in the absence of the said
fourteenth amendment. The people have never delegated any
such authority to either the State or federal government. The
amendment, therefore, introduces no new principle into the
administration of our municipal affairs; it is but declaratory of
a rule which has existed beyond the memory of man, and our

judicature was builded upon it. The question has never been, either before or since the adoption of the said amendment, whether the party could be deprived of his property without due process of law; but it has always been, whether the act complained of came within that wholesome inhibition. The latter inquiry is the one with which we have to deal in this case; it is whether the construction of said Tanner Creek Sewer by the common council of the city of Portland, and charging the cost thereof upon the lots and blocks owned by the respondents and others, which are claimed to be benefited by the sewer, without first giving such owners notice of its proposed construction, is depriving them of their property "without due process of law."

The question is one upon which the authorities are not in harmony, though I am satisfied that they largely preponderate in favor of the respondents' side of it; at least, the cases which hold that notice to a party in some form must be given before his property can be charged with a burden in order that he may have an opportunity to contest the right to impose it, or question the expediency of exercising it, is more in consonance with my idea of justice. And the very able opinion of Mr. Justice Earl, in *Stuart* v. *Palmer*, 74 N. Y. 191; 30 Am. Rep. 289, furnishes cogent and convincing logic that a proceeding of the nature and character referred to would operate to deprive the party of property "without due process of law"; but we cannot conclude that a proceeding under a legislative enactment, authorizing a burden to be imposed upon property without requiring notice to be given to the owner, would necessarily have the effect mentioned, without overruling a former decision of this court.

In *Strowbridge* v. *City of Portland*, 8 Or. 67, the question of the necessity of notice in such cases was directly raised. It was claimed in the brief of the appellants' counsel, which was prepared by Mr. Dell, that notice was a fundamental act, the absence of which rendered the assessment void. The respondents' counsel, upon the contrary, insisted that while the common council had caused notice to be published, in which it was stated that certain property would be assessed, it was a matter purely *ex gratia*, and could not affect the cause; that the common

council was under no obligation to give any notice or publish any resolution. Judge Boise, who delivered the opinion of the court at page 83 of the case, used the following language: "The elaborate manner pointed out in the charter for acquiring the authority to construct street improvements does not apply to the construction of sewers. The latter may be laid when, in the judgment of the city council, the same shall be necessary. They may be made without previous notice, the council alone being the judge of their necessity. Sewers are required as a part of the sanitary regulations of the city to prevent the development of local disorders, and generally to preserve the public health. It may, and often does happen in populous towns, that active measures have to be taken by city authorities in sanitary regulations, and it would not be wise to leave so important a power, often requiring the most prompt exercise to the tardy mode provided for inaugurating street improvements. Section 106 (now § 121) alone provides for the manner of making drains and sewers. The only question is, has the city council promptly exercised its powers under such section?" The view here expressed by the learned judge may not accord with that entertained by the present members of this court. In the light of subsequent decisions, we might be inclined to hold differently; but a court is not always at liberty to enforce the personal opinions of its members; due deference must be paid to the adjudications of their predecessors, more especially where a different course would interfere with property rights.

The decision in *Strowbridge* v. *City of Portland* was made nearly nine years ago. It declared valid the identical provision of the charter of the city which is before us, and under which all the sewers within the city have been constructed. Upon the faith of that decision, doubtless, the proceedings complained of were instituted, and an expenditure of thirty-five thousand dollars incurred in the construction of the said sewer; and to overrule it under the circumstances and pronounce void an act of the legislature under which the city, for more than a quarter of a century, has been carrying on extensive operations, would create confusion and occasion injustice. If the rule of *stare decisis* is

applicable under any circumstances, I think it should certainly be applied in this case. It cannot, it seems to me, be consistently asked of us that we pronounce so important a provision of a city charter void, which this court by a solemn adjudication in a former case has held to be valid, whatever our holding might be if the question were *res integra.*

We had occasion under similar circumstances to apply the doctrine of *stare decisis* in the *City of Corvallis* v. *Stock,* 12 Or. 391. The question there was, whether an appeal to the Circuit Court for the county of Benton would lie from a judgment of the recorder's court of the city for the violation of a city ordinance. The Circuit Court, following *Sellers* v. *City of Corvallis,* 5 Or. 273, sustained the appeal. Upon an appeal to this court from that ruling, it was contended by the appellants' counsel that *Seller* v. *City of Corvallis* has been overruled in *Town of La Fayette* v. *Clark,* 9 Or. 225, in which it was held, that an appeal would not lie from the judgment of a recorder of a city for the violation of a city ordinance, unless the right was given by statute; and the court was of the opinion that there was no material difference between the La Fayette charter and the Corvallis charter upon that subject, and said that it would be inclined to hold that the latter charter did not provide for such appeal, if it were not for the decision in *Sellers* v. *City of Corvallis.* That decision, we said, was rendered by judges occupying the same position we occupy, and while we did not indorse it, nor regard the reasons upon which it was predicated as satisfactory, yet that we did not feel at liberty to depart from it in the particular case before us.

It would be better, no doubt, if all judicial decisions were made upon correct logical principles; but that cannot be while intellectual infirmity exists; and experience has shown that it is less injurious to endure the evils of an unsound precedent, than to change it when the result would cause confusion, and disappoint and damage parties who have relied upon it as an established rule of law. Upon the principle here indicated we feel constrained to adhere to the ruling, as regards the question of notice made in *Strowbridge* v. *City of Portland, supra.* The

respondents' counsel also objects to the said ordinances, upon the ground that they do not provide for the levying of the assessments upon the property directly benefited in accordance with the rule of law, which requires assessments for local improvements to be laid in proportion to the special benefit received, over and above that general benefit experienced by the whole community.

The common council of the city, in section 5 of said ordinance No. 5068, declared that all the lots and blocks, and parts of lots and blocks, within the district before referred to would be directly benefited by said sewer, and were subject to assessment therefor, in proportion to the benefits received thereby as provided in section 121 of the city charter of said city. The subsequent ordinance, No. 5162, was adopted, and the proceedings thereon had, in order to estimate the proportionate share of the cost of such sewer to be assessed to the several owners of the property benefited thereby, and to assess the same to such owners. This subsequent ordinance and proceedings were evidently in pursuance of the prior ordinance, and were an exercise of the authority vested in the said common council by said section 121 of the city charter. Unless, therefore, the proceedings were in excess of the authority conferred by said section 121, or a fraudulent exercise of the use thereof, or the said section itself is void, said ordinances and proceedings cannot be attacked collaterally. The counsel's contention, if I understand it correctly, is that assessments for local improvements can be levied only to the extent of the special benefit conferred by such improvements, and that all exactions beyond that is taking private property for public use without just compensation. Said council do not claim that said section 121 of the charter is faulty in that particular, unless the meaning of it is that the property declared directly benefited shall bear the entire expense of the improvement, although in excess of the special benefit conferred. Their claim is, that declaring all the property within the sewer district directly benefited, and subject to assessment to the extent of the cost of its construction, without prescribing any mode of determining such benefit, was illegal.

The result of the counsel's theory is that a municipal corporation has no authority to make a local improvement, and charge the entire expense thereof upon the property benefited thereby, unless it specially benefits the property to the amount of such expense.   That theory is no doubt correct.   I do not think it can be successfully controverted; but who is to determine the question?   Is it the board of directors of the corporation, or are the courts to determine it as a question of fact?   If we were to say the latter, every case of local improvements would be liable to come into the courts, and there would be as many issues to determine as there were individual owners of property assessed; at least I never have heard of one being satisfied with his assessment in such a case.   Again, how are the courts to determine such a question?   Will they do it upon the testimony of witnesses called as experts, to give their opinions as to whether the benefits to a lot assessed for such purposes is equal to the amount assessed thereon, the same as in cases of taking property for streets and highways?   Such a course would hardly be practical, and would only result in substituting in place of the judgment of the common council, who are selected on account of their supposed fitness for that duty, the opinions of a multitude of witnesses, many of whom would be personally interested in the controversy.

It may be said that as the Circuit Court, under the Constitution of this State, has jurisdiction and supervisory control over inferior courts, officers, and tribunals, it has power to prevent a municipal corporation from inflicting a wrong upon a citizen by levying an unjust assessment upon his property.   This would doubtless be so where the officers of the corporation had usurped its functions, or were engaged in perpetrating a fraud; but on the other hand, if the courts were to undertake to control the discretion of the officers of a municipal government, it would be a usurpation on their part.   The common council of the city of Portland is not required to prescribe a mode for determining the benefits to property accruing from local improvements.   In the case of the construction of a sewer, it has authority to determine what property is directly benefited thereby, and to estimate the

proportionate share of the cost of such sewer to be assessed to the several owners of the property thus benefited. It exercises such authority as agent of the State, and for the public good; and so long as it keeps within the scope of its power the courts have no control over it, nor jurisdiction in a collateral proceeding to question its acts. If it were to attempt to assess property for the cost, of constructing a sewer, so laid as to render it physically impossible to benefit the property, as in the case of *Hanscom* v. *City of Omaha,* 11 Neb. 37, it would exceed its authority, and it would be the duty of the courts to interfere and prevent the wrong from working injury; but where the property is directly benefited by the prosecution of such an enterprise, and the common council has assessed what it deems a proportionate share of the cost upon the owner thereof, the courts are not authorized to institute an inquiry in order to ascertain whether or not the assessment exceeds the benefits. Such a practice would lead to interminable litigation.

The legislature has adopted the course prescribed in section 121 of the charter for laying down sewers. It has not provided any mode for estimating the value of the benefits conferred, whereby they may be compared with the amount of the assessments, for the reason, I suppose, that the former are presumed in all cases to exceed the latter; indeed, it would be very difficult to establish by proof the extent of the value of improvements of that character. Every one knows that a sewer in a densely populated part of a city is a necessity, and that the property there would be of no comparative value without it. The primary object of such an improvement is to confer a special benefit upon the property owner. The nature of this class of improvements is well described in *State* v. *City of Newark,* 3 Dutch. 185, in which the court, at pages 188 and 189, says: "There are in the legislation of every State a variety of statutes, whose primary design is the improvement of private property, and in which the public interest is merely incidental. To effectuate the object of these laws, they authorize assessments in the nature of taxes upon individual property, and direct the mode of enforcing them. Of this nature are many statutes,

public and private, in relation to the reclaiming of drowned lands, and the draining and fencing of swamp and meadows. The immediate design of these acts is the improvement of private property, each individual interested being required to contribute to the expense in proportion to his interest in the property, and to the benefit supposed to be conferred upon him. The public are interested in this class of improvements only as they tend to improve the salubrity of particular districts, or to increase the general wealth of the community. These assessments have little analogy to public taxes, either in the purpose for which they are assessed, or in the mode of enforcing them. So a city ordinance requiring every lot-holder to drain the surface water from his lot, to avoid the creation of a nuisance affecting the public health, and in case of failure, directing it to be done at public expense, and the amount to be a lien on the respective lots, though the design be purely a public benefit, savors more of a mere police regulation than a measure of taxation."

I can discover no inherent defect in the charter in regard to the mode of assessment of the costs of sewers. The common council only has power under it to lay down *necessary* sewers, and I think this court has the right to presume that when a sewer is necessary, its benefits to the property which it is intended to accommodate will be in excess of the expense incurred in its construction. Nor was the ordinance establishing the sewer in question, and declaring that the property within the sewer district referred to would be directly benefited by the sewer, and providing for estimating the proportionate share of the cost thereof to be assessed to the several owners of the property, void, unless it be shown that in consequence of the location of the property it was impossible for it to receive any benefit therefrom. The respondents allege in their complaint that their property, or any part of the same, had not been benefited, and would not be benefited by the sewer. This allegation is a mere conclusion. Whether their property had not been benefited, or would not be benefited by the sewer, must be shown by facts alleged. They do allege in a subsequent part of their complaint

that certain of their property within the said district assessed for the construction of the said sewer was at a level, so low that it was impracticable to drain the same into the sewer. That is a fact which if established by proof might entitle the owners of such property to relief against the assessment. Owners of property assessed a proportionate share of the cost of a sewer, who cannot, in consequence of its physical location, be benefited thereby, are entitled to relief against such assessment; but I do not think they have the right to join as plaintiffs in a suit to obtain the relief, as the assessment and attempted enforcement of it are the grounds of the complaint, and as respects each owner are several in their nature—are distinct acts.

Under this view the demurrer to the complaint should have been sustained. The decree appealed from will therefore be reversed, and the cause remanded to the Circuit Court, with directions to sustain the demurrer, and for such other proceedings as are consistent with the rules of law in such cases.

Petition for rehearing.

[Filed October 11, 1888.]

Thayer, C. J.—It has been held by courts of good standing that improvements, such as the construction of drains and sewers, might be made, and the cost thereof assessed upon the owners of adjacent property, without formal notice to them of the proposed improvement. The grounds upon which such decisions are maintainable, if at all, are, that the act is but the exercise of the taxing power of the State; and as the State, when it deems it necessary for the health and comfort of the community that such improvement be made, and the adjacent property will be benefited thereby, may directly cause it to be made without previous notice to the parties affected. It can delegate to a municipal corporation, as its agent, the same power, without requiring it to give such notice as a condition of the exercise of the power. Whether such view is strictly correct or not, we have not undertaken to determine.

This court, as shown in our opinion delivered herein, held, several years since, that such authority could be exercised with-

out previous notice, upon the faith of which important affairs have been transacted, creating rights and establishing relations that would be disturbed, to the great annoyance of the public, if that decision were overturned. In view of that fact, we feel bound to adhere to the previous ruling upon the question, whatever our views might be regarding it if *res nova*.

The petition for a rehearing must be denied.

STRAHAN, J.—I concurred in the affirmance of the decree in this case, and also in the order overruling the petition for a rehearing, on grounds somewhat at variance from those stated in the opinion, and which, I think, I ought to indicate briefly. The plaintiffs were not active nor prompt in complaining of those assessments. So far as appears, they remained passive and indifferent spectators during all the time the city was engaged in assuming liabilities in the construction of the sewer. Had they been prompt in complaining and in averting the action of the city, before the liabilities were incurred and the work substantially completed, it seems to me they would have occupied a more favorable light in a court of equity. I do not say that this apparent laches would close the door of a court of equity against them in a case free from doubt, but it requires the court to examine their claim somewhat more critically than it would otherwise be inclined to do.

The ordinances relating to this sewer were duly published in the official newspaper of the city of Portland. This of itself may not amount to technical notice to the plaintiffs of what the city was doing, and yet there is authority for holding that the members of a corporation are bound to take notice of its laws. (*Inhabitants of Palmyra* v. *Morton*, 25 Mo. 593.) But however this may be, it appears from appendix "A," annexed to the plaintiffs' amended complaint, that the viewers appointed by ordinance No. 5068 to estimate the proportionate share of the cost of said sewer, to be assessed to the several owners of property benefited, gave notice of their first stated meeting, which was on June 25, 1887, at 6:30 o'clock P. M. of said day, by publication in the Daily News, the official paper of the city, at

which time they met and proceeded with their work, adjourning from day to day until the final completion of their labors. The object of this notice was to enable every person interested to be present and defend his rights before the viewers; to make such representations and statements before them as his interest might require or the facts justify, and if the law were improperly applied in any particular instance, the party injured had his remedy by writ of review to correct the same. (*People ex rel. Citizen's Gaslight Co. of the City of Brooklyn* v. *Board of Assessors of the City of Brooklyn,* 39 N. Y. 81; *Kennedy* v. *City of Troy,* 77 N. Y. 493; *Le Roy* v. *Mayor etc.* 20 Johns. 430; 11 Am. Dec. 289; *Heywood* v. *City of Buffalo,* 14 N. Y. 534; *Western R. R. Co.* v. *Nolan et al. Board of Assessors of the City of Albany,* 48 N. Y. 513; *Rhea* v. *Umatilla Co.* 2 Or. 298; *Poppleton* v. *Yamhill Co.* 8 Or. 338; *Oregon & W. M. Savings Bank* v. *Jordan,* 16 Or. 113.) But it is objected that neither the charter nor ordinance expressly provides for notice, and that, therefore, though notice may have been in fact given, the constitutional objection of want of notice is not met.

Sections 95, 96, 97, 98, and 99 of the charter all provide for and regulate notice in case of improvement of streets; and section 121, which authorizes sewers, provides, among other things, "and when the council shall direct the same (costs) to be assessed on the property directly benefited, such expense shall in every other respect *be assessed* and collected in the *same manner as is provided in the case of street assessments.*" The charter expressly provides for notice in case of street assessments, and section 121 makes the provisions applicable in case of sewers, where the expense is ordered by the council to be made a charge on the property directly benefited. In addition to this, section 12 of ordinance No. 5068, provides that the viewers shall hold stated meetings at the office of the auditor and clerk of said city, and all persons interested may appear before said viewers and be heard in the matter of making said estimates.

I think it would be a reasonable construction of this ordinance to hold that the right to be heard implies that notice shall be given, and if this be so, the ordinance does provide for notice by

necessary implication.    That which is implied in a statute is as much a part of it as what is expressed.    (*Minard* v. *Douglas Co.* 9 Or. 206.)

This view of the subject, it seems to me, fully satisfies the constitutional requirements insisted upon by counsel for appellants.    In *Hildreth* v. *City of Lowell*, 11 Gray, 345, the ordinance alone provided for notice, which was given, and this was held sufficient.    And *Williams* v. *Mayor etc. of Detroit*, 2 Mich. 560, is to the same effect.

LORD, J., was for a rehearing.