(June 8, 1908.)

HENRY S. KNOWLES, Appellant, v. NEW SWEDEN IRRIGATION DISTRICT, Respondent.

[101 Pac. 81.]

IRRIGATION DISTRICTS—POWER AND AUTHORITY TO LEVY ASSESSMENTS—JURISDICTION TO LEVY ASSESSMENTS—RIGHT AND POWER OF CONDEMNATION—TAKING PROPERTY WITHOUT COMPENSATION OR DUE PROCESS OF LAW—ADMISSIONS MADE IN PLEADINGS—UNLAWFUL ASSESSMENTS PAID FOR USE OF ANOTHER—INJUNCTION.

1. An irrigation district organized under the provisions of the irrigation district act of the legislature of 1899 (Sess. Laws 1899, p. 408) has no power, authority or jurisdiction to levy and collect assessments against lands within the district for which the owners already own and possess water rights and privileges, until such time as the district first purchases or condemns such water rights.

2. Before an irrigation district organized under the statutes of this state can acquire jurisdiction to levy special assessments against any particular tract of land within the district for the purpose of purchasing or constructing an irrigation system, it must appear that by reason of such construction or purchase the district is going to be in a position to render benefits of some character, kind or nature, to the particular tract of land on which it seeks to levy its assessments. Jurisdiction in such cases to levy special assessments is dependent upon the power and ability of the corporation to confer benefits to some extent and in some measure, and an absolute inability to confer any benefits implies and signifies a lack of jurisdiction to levy such assessments.

3. A corporation, whether private or public, that purchases water rights, ditches and a canal system, must necessarily take them subject to all the duties and burdens of which it has notice, that existed against the grantor.

4. Where a land owner had purchased from a canal company a water right entitling him to the annual and perpetual use of sufficient water for the irrigation of his farm, and for the use of which it was stipulated he should only be charged a specified and fixed sum per acre annually for the number of acres irrigated, he cannot thereafter be deprived of such right without just compensation by reason of the organization of an irrigation district and the canal company selling its system and water rights to the district.

5. A right acquired by a land owner by purchase from a canal company, entitling the land owner to sufficient water for the irrigation of his farm upon the payment of a fixed and specified annual rental per acre, is a property right, and the levying of an assessment by the district against such land for the purpose of purchasing the water system and canals, without first purchasing or condemning his right, amounts to the taking of his property without just compensation in violation of sec. 14 of art. 1 of the constitution.

6. Any destruction, interruption or deprivation of the usual and ordinary use of property amounts to a taking of the same both without compensation and without due process of law, in violation of the constitutional guaranty.

7. A clear distinction exists and should be drawn between the rights that a party acquires by contract with a canal company, whereby he purchases a water right and privileges sufficient for the irrigation of his land upon the payment of a fixed and specified annual rental, and the rights acquired, on the other hand, under sec. 4 of art. 15 of the constitution, whereby arises and attaches a perpetual dedication of waters to the lands upon which they have been once applied on payment of the annual rental charges therefor, as the same may be fixed in accordance with law.

8. Although a water right purchased by a land owner from a canal company should be condemned by the district, such condemnation would not interfere with or interrupt the dedication already effected under the provisions of sec. 4 of art. 15 of the constitution, but in the latter event the land owner would be required to pay such charges as might be established in conformity with law.

9. Admissions made in pleadings on which the trial is had are solemn admissions in the case in which they are made, and are not required to be supported by evidence on the part of the adverse party. Such admissions are taken as true against the party making them, without further proof or controversy. On the other

hand, under the provisions of sec. 4217, Rev. Stat., the plaintiff is deemed to have denied any and all allegations of new matter contained in the answer, but such statutory denials do not impose upon the plaintiff the necessity of proving any such allegations, in the event he desires to rely on or avail himself of any admissions therein contained.

10. One who pays, under protest, unlawful assessments made against another, and out of the moneys of such other party held for the purpose of such payment, cannot thereafter recover the same in an action instituted for that purpose. He will be deemed to have no interest therein or cause of action therefor.

(Syllabus by the court.)

APPEAL from the District Court of the Fifth Judicial District, for the County of Bannock. Hon. Alfred Budge, Judge.

Action by the plaintiff to quiet his title to certain water rights and privileges, and to enjoin and restrain the defendant from levying and collecting certain assessments against his lands, and to recover assessments paid under protest. Judgment for the defendant and plaintiff appeals. *Reversed.*

Merriman & Wilkins, for Appellant.

The contention of the defendant that the statute invests it with the power to ''levy an assessment,'' on any other basis than that of benefits to the owner of the land, is utterly baseless, as such provision, if one existed, would be in violation of our constitution (art. 1, sec. 14; art. 15, sec. 4) as well as of the constitution of the United States. (*Norwood v. Baker*, 172 U. S. 286, 19 Sup. Ct. 187, 43 L. ed. 450; *Thomas v. Gain*, 35 Mich. 155, 24 Am. Rep. 535; *In re Canal Street*, 11 Wend. 156; *State v. Mayor etc. of Hoboken*, 36 N. J. L. 293; *Tidewater Co. v. Coster*, 18 N. J. Eq. 527, 528, 90 Am. Dec. 634; Dillon on Mun. Corp., 3d ed., sec. 761; *Bloomington v. Latham*, 142 Ill. 462, 32 N. E. 509, 18 L. R. A. 487; *Allen v. Drew*, 44 Vt. 174; *Forster v. Scott*, 136 N. Y. 577, 32 N. E. 977, 18 L. R. A. 543; *Fay v. City of Springfield*, 94 Fed. 421; *Charles v. City of Marion*, 100 Fed. 524.)

''There can be no justification for any proceeding which charges the land with an assessment greater than the bene-

fits; it is a plain case of appropriating private property to public uses without compensation." (Cooley on Taxation, 2d ed., p. 661; *People v. Houston*, 54 Cal. 536.) The assessments in question were not made on the basis of benefits and are therefore illegal. (*City of South Pasadena v. Pasadena L. & W. Co.*, 152 Cal. 579, 93 Pac. 494; *Nampa Irr. Dist. v. Brose*, 11 Ida. 487, 83 Pac. 499.)

A local assessment may so transcend the limits of equality and reason that its exaction would cease to be a tax or contribution to a common burden and become extortion and confiscation. In that case it would be the duty of the court to protect the citizen from robbery under color of a better name. (*Bloomington v. Latham, supra; Allen v. Drew*, 44 Vt. 174.)

"The legislature cannot pass any law that will put it into the power of an irrigating company to control and manage the waters of any part of the territory regardless of the rights of parties." (*Munroe v. Ivie*, 2 Utah, 535; *Forster v. Scott*, 136 N. Y. 577, 32 N. E. 977, 18 L. R. A. 543; *Hard v. Boise*, 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407; *Beveridge v. Lewis*, 137 Cal. 619, 92 Am. St. 188, 67 Pac. 1041, 70 Pac. 1083, 59 L. R. A. 581.)

"An agreement by plaintiff's predecessor in interest giving to defendant an interest in the ditch for the purpose of using the waters thereof to irrigate his lands on a sufficient consideration is binding upon both the party making the agreement and those holding or claiming to hold under it." (*Feeney v. Chester*, 7 Ida. 324, 63 Pac. 193.)

"A ditch company diverting water for general purposes of irrigation cannot by its by-laws, rules or regulations exempt itself from the operation of the constitution in respect to priority of appropriation." (*Combs v. Agricultural Ditch Co.*, 17 Colo. 146, 31 Am. St. 275, 28 Pac. 966.) "The constitution making water a public use does not grant power to appropriate water for the use of the public without compensation." (*People v. Elk River Mill. Co.*, 107 Cal. 221, 48 Am. St. 125, 40 Pac. 531.) Property owners cannot be deprived of water rights without being paid therefor. (*Wil-*

*terding v. Green,* 4 Ida. 773, 45 Pac. 135; Sess. Laws 1903, p. 242; 179, secs. 42, 43; Const., art. 1, sec. 14.)

"Property is taken within the meaning of the constitution after an ordinance to that effect is passed and an assessment has been made. A physical taking is not required." (*McMicken v. City of Cincinnati,* 4 Ohio St. 394; *Peregoy v. Sellick,* 79 Cal. 568, 21 Pac. 966; *In re Rogers Ave.,* 22 N. Y. Supp. 27, 29 Abb. N. C. 361; *Pompelley v. Green Bay M. Canal Co.,* 13 Wall. 166, 20 L. ed. 557; *Foster v. Scott,* 136 N. Y. 577, 32 N. E. 977, 18 L. R. A. 543; 15 Cyc. 652, 653, and citations.)

"Defendant is bound by the allegations in his answer." (Cyc. of Pl. & Pr., 915, sec. d.) "Admissions made in pleadings bind the party in the suit in which they are filed, and even in certain subsequent suits." (1 Am. & Eng. Ency. of Law, 719, 720; 1 Words and Phrases, 205; *Bourn v. Dowdell* (Cal.), 50 Pac. 695; *State v. Thum,* 6 Ida. 331, 55 Pac. 858; *Bloomingdale* v. *Du Rell,* 1 Ida. 40.) An admission in pleadings dispenses with proof and is equivalent to proof. (*Connecticut Hospital v. Town of Brookfield,* 69 Conn. 1, 36 Atl. 1017.) An illegal and void assessment can be attacked in any manner and in any proceeding, collateral or otherwise. (*Kline v. Tacoma,* 11 Wash. 193, 39 Pac. 454.)

O. E. McCutcheon, for Respondent.

"The tax must have been illegal and void, and not merely irregular." (2 Cooley Tax. 1489.) The levying or spreading of taxes against property is not a "taking" of such *property,* within the meaning of the constitutional provisions. In taking property by eminent domain "a particular item or parcel is. taken, because for public purposes there is special need of it." (1 Cooley Tax. 411; 2 Cooley Tax. 1182, 1183.)

To constitute a "taking" there must be a direct physical invasion of the property itself or a "physical disturbance of a right which the owner possesses in connection with his estate." (*Gottschalk v. Chicago etc. R. R.,* 14 Neb. 550, at 556, 16 N. W. 475, 17 N. W. 120; Lewis' Em. Dom. 233.)

Before the courts will interfere on the ground that a party has been denied due process of law, there must be shown "a clear case of abuse of legislative authority." (2 Cooley Tax. 1179, 1257.) "In all collateral proceedings the benefits assessed are conclusively presumed to be received and the assessment is not open to revisal or review." (2 Cooley Tax. 1258; *Paulson v. City of Portland,* 16 Or. 450, 19 Pac. 450, 455, 1 L. R. A. 673.) The court need only be satisfied that he might possibly have been benefited, or that the proceedings were "not manifestly colorable or arbitrary." It must be "legally possible" that the assessment be just and equal. (2 Cooley Tax. 1209, note 2.)

Plaintiff paid the taxes of 1900 and 1901 out of John Brand's money. Even if the laws of 1899 were unconstitutional, he could not recover so far, for lack of interest. If suing for the benefit of Brand, the suit is not in the name of the real party in interest.

AILSHIE, C. J.—This appeal involves the power and authority of an irrigation district organized under the laws of this state to levy assessments for the purposes of defraying the principal and interest on bonds issued for the purchase of an irrigation system against the lands of one who owned his own water right and privileges at the time of the organization of the district and the levying of the assessment. The case arises out of the following state of facts:

In the years 1891 and 1892, the Great Western Canal Construction Company built and constructed a canal system called the Great Western Canal, which system covered and included the lands of the appellant herein. In the year 1892, *Addison V. Scott,* the patentee from the United States of the lands now owned by appellant, purchased from the Great Western Canal Construction Company a water right of 250 inches of water per second of time, for use in the irrigation of his lands. For this right Scott paid the sum of $1,800 and procured a deed for the same, which recites the terms and considerations for the purchase and the conditions under which the water shall be used and applied. Among other things it is stipulated and agreed that the canal

company should forever keep in repair and maintain its canal and ditches, and should deliver the quantity of water thereby sold and conveyed to the lands of the purchaser, which lands are therein specifically described. The company, on the other hand, reserved an easement and right of way over and across the purchaser's lands for the purpose of constructing and maintaining its ditches and canals. The deed also fixes a definite and certain sum to be paid by the land owner annually as water rental. This provision of the deed is as follows:

"Said second party also hereby further covenants and agrees to pay to said party of the first part, its successors or assigns, in addition to the consideration (hereinafter) agreed to be paid, an annual rental for the use of water from said canal on said land for irrigation as aforesaid, one dollar per acre for all crops and trees for the number of acres of said land actually irrigated in that year. Said rental to be due and payable on or before the first day of November in each year, and if not paid when due, to draw interest at the rate of one per cent per month."

This deed was placed of record and Scott and his successors in interest received water from the canal from year to year under the terms of this deed and contract. On January 15, 1900, the respondent, New Sweden Irrigation District, was organized under the provisions of the irrigation district act of 1899 (Sess. Laws 1899, p. 408), and embraced the Scott lands. On March 7, 1900, the New Sweden Irrigation District purchased the Great Western canal system, together with all of its water rights and appurtenances, for the sum of $65,000, which sum was paid in six per cent interest bearing bonds of the district. On December 12, 1901, the appellant herein, by mesne conveyances, became the owner of the premises and water rights and privileges formerly owned by Scott. Immediately after the organization of the district, the irrigation district, through its board of directors, began levying annual assessments on the lands included within the district, including the lands of the appellant herein, for the purposes of paying the interest and

reducing the principal on the bonds and for improvements on the system and maintenance thereof. The first two assessments were levied prior to the purchase of this land by appellant, and his grantor refused to pay the same, and upon the sale being made, the appellant retained the amount of these two assessments from the purchase price. The appellant refused to pay these assessments and also refused to pay the subsequent assessments made against the land. Finally the officers of the district threatened to sell the lands for the collection of the assessments and were taking steps to that end, whereupon the appellant paid all the assessments then due under protest. This action was commenced for the purpose of recovering the assessments previously made under protest and restraining the district from levying or attempting to collect any further assessments against appellant's lands, and to quiet his title in and to the water right purchased by his predecessor in interest from the Great Western Canal Construction Company.

The appellant contends that to allow the irrigation district to assess his property along with the property of other water consumers in the district for the purchase and maintenance of this irrigation system, without in the first place purchasing or condemning his water right, would amount to taking his property without just compensation and without due process of law, and cannot be justified under any theory or pretense of taxation or special assessments. The respondent, the irrigation district, contends, on the other hand, that it is pursuing the statutory method, and that it has a right to levy an assessment against the property of appellant together with all other real estate within the district, and that such a special levy or assessment does not fall within the constitutional inhibitions invoked by appellant.

It seems to us that this question may be simplified by briefly stating some fundamental principles that must necessarily arise in the consideration of this matter and upon which its correct determination must necessarily rest. In the first place, appellant's predecessor in interest, Scott, had a clear and undisputed right to contract with the Great

Western Canal Construction Company for the purchase of
a water right sufficient to irrigate his tract of land. This
he did, and for that right he paid $1,800. Under it he and
his successors in interest were entitled to the perpetual use
of water sufficient to irrigate his tract of land, not exceed-
ing 250 inches per second, upon paying the fixed and stipu-
lated price of $1 per acre as rental therefor. Under the
laws of this state a water right is real estate. (Sec. 2825,
Rev. Stat.; *Ada Co. etc. Co. v. Farmers' etc. Co.*, 5 Ida. 799,
51 Pac. 990, 40 L. R. A. 485; *McGinnis v. Stanfield*, 6 Ida.
372, 55 Pac. 1020; *Hall v. Blackman*, 8 Ida. 272, 68 Pac. 19.)
The conveyance of this property, having been made a matter
of record, became notice to subsequent purchasers from the
Great Western Canal Construction Company. The respond-
ent, New Sweden Irrigation District, had a right to organize
itself into a quasi-municipal corporation for the purpose of
purchasing, acquiring or constructing canals, ditches, water
rights and a canal system. This it has done. It had a right
to purchase the Great Western Canal system, and the Great
Western Canal Construction Company had a right to sell
this property. The irrigation district having the right and
capacity to purchase, and the canal company having the
property and the right to dispose of the same, the latter
could lawfully sell to the irrigation district, which it has
done. The canal company could not sell any greater title
than it possessed, and when the irrigation district purchased,
it could neither purchase nor acquire any greater title or
interest than its grantor owned and possessed. When it
purchased this canal system, it purchased it subject to and
burdened with the rights and equities of the appellant's
grantor. We have not been cited to any case directly in
point here, but by analogy of reasoning the following cases
furnish some light on the subject:

*Hewitt v. San Jacinto Irr. Dist.*, 124 Cal. 192, 56 Pac. 893,
was decided under the Wright irrigation law of California,
from which our irrigation district law was copied. In that
case the court was considering the right of an irrigation dis-
trict to acquire the water and canal system from which other

lands were already being irrigated, and it was there held that an irrigation district under its general power to acquire and hold such waters and water rights, and other property as should be necessary to supply water to irrigate the lands within the district, had power to purchase and hold water already in part used on the lands outside the district, and to take such rights subject to the accrued use and to continue to furnish the water to such outside lands as had been previously receiving water from such system.

In *City of South Pasadena v. Pasadena Land & Water Co.,* 152 Cal. 579, 93 Pac. 490, a similar question arose. The city purchased a canal system from the land and water company. The latter company had been furnishing certain citizens and land owners with water, and the question arose as to the liability of the land and water company's grantee, the city, to fulfill the land company's obligation to supply its consumers with water in the future. The court, among other things, said:

"The contention that no remedy exists to compel performance by the successor in interest is without force. In case of the establishment of a water system of this character, all the persons to whose use the water is appropriated or dedicated are vested with a right to have the supply continued by whomsoever may be in control thereof. . . . . If the water is supplied for use upon land for its benefit, as for irrigation, the right to receive and use it becomes in the nature of an appurtenance to the land. If it is supplied for personal use to all persons within a certain territory or to all of a certain class within the territory, the right to its use is personal to the inhabitants of the territory, or to the members of the class, as the case may be, so long as they remain such. In either case the right may be enforced against the person in control of the supply and the works by which it is distributed, regardless of the title, by means of an action in mandamus to compel the continuance of the distribution, in the usual and proper manner, to those entitled."

In *Beck v. Pasadena Lake Vineyard Land & Water Co.* (Cal.), 59 Pac. 387, Beck was endeavoring to establish his

right and to quiet his title to 1/1250 part of all the water rights belonging to the water company under a deed in many respects similar to the one involved in this case.   The court there said:

"Where a land owner is entitled to an undisputed right and easement in and to a certain proportion of water, which an association was entitled to take from a stream to supply its irrigating plant connected with his land, on payment of his proportionate share of the expenses of maintaining the plant, a corporation succeeding to the rights of the association and the rights of other individual owners takes its property subject to his easement, and cannot deprive him thereof, though it improves and extends the system, and changes open ditches to pipe lines."

Now, it is clear to us that for the purchase of this system respondent could not legally and lawfully assess appellant's property until such time as it had either purchased or acquired his water right and privileges and reduced him to a common level, and placed him on a common footing with other land owners and water consumers in the district. To assess appellant for the purchase of a water right and canal system upon the theory that his lands were to be benefited thereby on account of receiving water from such system is wholly unjustifiable, where the appellant was already the owner of sufficient interest, title and claim in the water right and canal system for his own purposes, and where the purchase was not to be received by him either in whole or part, but was to be received wholly by a third party.   If, on the other hand, his water right had been purchased by the irrigation district or condemned by it, then it would have been eminently proper to assess his lands proportionately according to the benefits received for the purchase or condemnation price.   In this connection it must be borne in mind that there is a wide and well-defined distinction between the rights and appurtenances appellant had acquired under his grantor's contract with the Great Western Canal Construction Company and the rights that he acquired under sec. 4 of art. 15 of the constitution, which constitutional pro-

vision works a perpetual dedication of the waters to the lands on which they have been once applied upon payment of the annual rental charges therefor. The latter right would remain as a matter of law, even though the district had condemned appellant's property rights acquired under his grantor's contract with the Great Western Canal Construction Company. The only additional right and privilege that this contract gave the purchaser over any other water user is that of receiving his water annually at the fixed and stipulated rental of one dollar per acre. On the contrary, a water consumer who had not purchased such a contract would be liable to pay such annual water rates as might be established from time to time in conformity with the statute. But under this contract neither the canal company nor its successors in interest could ever raise the rate as against appellant.

In this connection, it is contended by counsel for respondent that there is nothing in the record to show but what all the land owners within this irrigation district had purchased water rights, and are and were on an equal footing and in like condition with the appellant. The correct determination of this proposition is rather a question of law than of fact. There is no allegation in the plaintiff's complaint as to whether the plaintiff stands alone in owning the water right in the district or whether all the other property owners own a like water right. Neither is there anything contained in the findings upon that subject. The defendant, however, pleaded certain facts as new matter constituting a defense to the plaintiff's cause of action, among which the following allegation is contained:

"That at the time of the purchase of the said canal system as aforesaid, the same was out of repair and required much restoration work and extensions to enable it to irrigate all the lands requiring irrigation in said district, that at the time of such purchase about seventy-five per cent of the irrigable lands in said district were wild, unbroken, uncultivated, that immediately after the said purchase, the residents and land owners in said district began to break up and

cultivate the same, and that such work has gone on from year to year until about two-thirds of the land in said district has been brought under cultivation, and that all of said cultivated land requires irrigation, and that this defendant has from time to time done such necessary restoration work and made such extensions of said canal system that it has in fact furnished water sufficient to irrigate all cultivated land in said district.''

It will therefore be seen that the defendant pleaded as a fact that seventy-five per cent of the land in the district was raw, unbroken and uncultivated land. It would consequently follow that no water rights had previously belonged to such lands.

Appellant contends that this is an admitted fact in the case and that it became unnecessary for him to prove such fact. Respondent, on the other hand, contends that under sec. 4217, Rev. Stat., such allegation was deemed denied, and that in order for the appellant to have availed himself of this admission as a fact in the case upon which to rest for any relief, he must have introduced this pleading in evidence and have proven it in that manner as an admitted fact in the case. We cannot give our assent to this as a legal proposition. Under sec. 4217, Rev. Stat., the plaintiff is deemed to have denied any and all allegations of new matter contained in the answer, but the fact that such matter is deemed denied for plaintiff's purposes does not enable the party who has pleaded such facts to himself deny or dispute them. They stand as admissions against him throughout the case. If, on the other hand, the party pleading such facts should seek to recover upon them, or should rely upon them, he must establish them by competent proof. The pleadings in a case are before the court, and constitute a part of the proceedings without being introduced in evidence. Admissions made in a pleading are denominated solemn admissions and are not required to be supported by evidence on the part of the adverse party. Such admissions are taken as true against the party making them, without further proof or controversy. (*East Tennessee V. & G. R. Co. v. Kane,* 92

Ga. 187, 18 S. E. 18, 22 L. R. A. 315; *Bloomingdale v. Du Rell*, 1 Ida. 33; 1 Ency. of Ev. 422; *Colter v. Calloway*, 68 Ind. 219; 1 Greenleaf on Evidence, secs. 27, 205.) It is different from a case where the admissions are contained in pleadings in another action or in other papers, or in pleadings that have been amended or supplemented by new pleadings.

We conclude that it stands as an admitted fact in this case upon the face of the record that at least seventy-five per cent of the lands in this district are and were wild, unbroken and uncultivated lands, and it therefore follows that the plaintiff and appellant herein was not upon an equal footing with the other land owners in the district. Those owning the wild and unbroken lands in the district could control the organization of the district and election of officers, and would be in a position to absolutely dictate as to those matters, and if the position taken by respondent is correct, those who have never expended a dollar for the improvement of their lands or the purchase of water rights could, by their votes, deprive the land owners, who had previously purchased water rights, of all the value and benefit thereof, and substantially and in effect take their water rights without any compensation or consideration, and without due or any process of law, and by such means abrogate contracts entered into, and annihilate property rights acquired for valuable considerations. There would be gross injustice in such a proposition, and it is clearly not contemplated by the statute and cannot be supported by authority.

Now, the taking in this case consists in rendering appellant's water right absolutely valueless and worthless to him, and should be distinguished from the taking that would arise from the levy of the assessment upon appellant's land. It has been generally held that the mere levy and collection of a special assessment is not a taking of the lands assessed within the constitutional inhibition; but in this case the result would be not so much a taking of the land itself, but it would be a rendering utterly valueless the appellant's previously acquired water right and privilege (which is real

property) without any compensation whatever, and in that
sense the taking is complete and in violation of appellant's
constitutional rights. (Const., secs. 13, 14, art. 1.)

Any destruction, interruption or deprivation of the com-
mon, usual and ordinary use of property is by the weight
of authority a taking of one's property in violation of the
constitutional guaranty. (15 Cyc. 652; *City of Janesville
v. Carpenter,* 77 Wis. 288, 20 Am. St. 123, 46 N. W. 128, 8
L. R. A. 808; *United States v. Lynah,* 188 U. S. 445, 23 Sup.
Ct. 349, 47 L. ed. 539; *Forster v. Scott,* 136 N. Y. 577, 32
N. E. 976, 18 L. R. A. 543; *Memphis etc. R. Co. v. Birming-
ham S. & T. R. R. Co.,* 96 Ala. 571, 11 So. 642, 18 L. R.
A. 166.)

Now, as to the contention of appellant that he cannot be
assessed in any sum, either for the purchase of the system
or for water rentals or maintenance charges until the irriga-
tion. district either purchases or condemns his water rights
under his contract, we think his position is not well taken.
It can make no difference to him as to who is the owner of
the canal system so long as he receives the amount of water
to which he is entitled at the annual water rental he has
agreed to pay; namely, one dollar per acre for the amount
of land actually irrigated. The fact that the irrigation dis-
trict has purchased the system is no ground of defense for
appellant against the payment of water rentals to the extent
of the contract price. As to whether or not the district can
in any manner be required to purchase or condemn all such
rights before proceeding to levy and collect assessments, we
express no opinion, as appellant is not in a position to raise
that question, and it is therefore not properly before us.

Appellant seeks to recover the assessments paid under pro-
test for the years 1900 and 1901. We think the record dis-
closes a very cogent and persuasive reason why the appel-
lant cannot recover those assessments. They were levied
against the land before it was purchased by appellant, and
when appellant made his purchase he reserved the amount
of these two assessments from the purchase price. It was
therefore not his money that he paid to the irrigation dis-

trict but it was rather the money belonging to his grantor, and his grantor was evidently willing to pay these assessments or else he would not have allowed his grantee, appellant herein, to retain those sums from the purchase price for this purpose. (*Anderson v. Oregon Mtg. Co.*, 8 Ida. 418, 69 Pac. 130.)

For the reasons hereinbefore given the appellant cannot recover back payments made for annual rental or maintenance up to the amount of one dollar per acre for the lands actually irrigated each year since his purchase. On the other hand, he is entitled to an injunction restraining and prohibiting the district from levying any assessment against his property for the payment of the purchase price and interest on bonds issued for the purchase of this canal system.

It has been argued by respondent that since the law creates and establishes a board for the purpose of estimating, determining and levying these assessments against the various tracts of land in the district in proportion to the benefits received, that such board had jurisdiction and was the proper tribunal to determine the same, and that its action and exercise of discretion thereon is final, and cannot be reviewed in a case for injunction restraining a collection of the same. That proposition would, perhaps, be correct in a case where the board or body had jurisdiction to levy any assessment whatever. In other words, if the question was only one as to the amount of the assessment being unreasonable and disproportionate to the benefits received, then respondent's contention might, and perhaps would, be correct (2 Cooley on Taxation, 3d ed., 1182, 1258; *Roby v. Shunganunga Irr. Dist.*, 77 Kan. 754, 95 Pac. 399; *Paulson v. City of Portland*, 16 Or. 450, 19 Pac. 450, 1 L. R. A. 673); but in this case, under the facts disclosed, the irrigation district never took such steps as to acquire jurisdiction for its board of directors to make any levy against this particular tract of land. (*Andrews v. Lillian Irr. Co.*, 66 Neb. 458, 97 N. W. 336, 92 N. W. 612.) No benefits whatever could accrue to the appellant out of the purchase by the irrigation district of this water system. Before it could acquire jurisdiction of his lands to determine benefits to be derived and proportionate

assessments to be levied, it must place itself in such a position that it can confer like or similar benefits upon him and his lands as upon the other land owners within its territorial jurisdiction.   It must at least be taking steps to enable it to confer some benefits on his lands.   Here it is not a question of an excessive levy being collaterally attacked, but of a void levy as against these lands.   It differs from sewer and drainage assessments where the general health and sanitary conditions of the whole district is to be improved and thereby benefited, or the lands are all to be improved in some measure by the drainage.   Here appellant is already the owner of sufficient water rights and privileges to irrigate his lands, and the irrigation of other lands in the district cannot aid him or render any benefit to his lands, and it cannot benefit him to furnish him the water he already owns and is entitled to use.   These views seem to be borne out by the provisions of the statute itself.   Sec. 12 of the act of the legislature of 1899 (Sess. Laws 1899, p. 415) provides, among other things, as follows:

"The board and its agents and employees shall have the right to enter upon any land to make surveys, and may locate the necessary irrigation works and the line of any canal or canals, and the necessary branches for the same, on any lands which may be deemed best for such location.   Said board shall also have the right to acquire, either by purchase, condemnation or other legal means, all lands and water rights, and other property necessary for the construction, use and supply, maintenance, repair and improvements of said canal or canals and works, including canals and works constructed and being constructed by private owners, lands for reservoirs for the storage of needful waters, and all necessary appurtenances.   In case of purchase, the bonds of the district hereinafter provided for may be used to their par value in payment."

Sec. 13 of the act provides that legal title to all property acquired shall vest in the irrigation district, subject to the uses and purposes for which it was acquired.   Sec. 43 of the act provides as follows:

"None of the provisions of this act shall be construed as repealing or in anywise modifying the provisions of any other act relating to the subject of irrigation or water distribution, except as provided in sec. 59 of this act. Nothing herein contained shall be deemed to authorize any person or persons to divert the waters of any river, creek, stream, canal or ditch from its channel, to the detriment of any person or persons having any interest in such river, creek, stream, canal or ditch, or the water therein, unless previous compensation . be ascertained and paid therefor, under the laws of the state authorizing the taking of private property for public uses."

These provisions of the statute were evidently enacted for the very purpose of enabling the district to acquire all the water rights and privileges held and owned by individuals, companies or corporations within the territorial jurisdiction of the district. It was contemplated by the legislature that districts would be formed wherein individuals or small companies might own their own water rights and ditches for their private use, and it must have been intended that if the district desired to acquire such rights and assess the property on which such waters. were being applied, it might do so by purchasing or condemning the water rights and bringing their owners into the community of interest with the other land owners in the district, and thereby place them on an equal footing with all others against whom assessments might be levied and collected.

It follows from what has been said that the judgment and order appealed from must be reversed, and it is so ordered, and the cause is remanded with direction to the trial court to take such other and further proceedings as may appear necessary in conformity with the views herein expressed. Costs awarded in favor of appellant.

Sullivan and Stewart, JJ., concur.

ON REHEARING.

(April 10, 1909.)

[101 Pac. 87.]

IRRIGATION DISTRICTS—CONFIRMATION OF ORGANIZATION—BOARD OF DI-
RECTORS OF—POWER TO LEVY ASSESSMENTS—LEGALITY OF—NOTICE
OF ELECTION—OF VOTING BONDS—OF CONFIRMATORY PROCEEDING
—PROCEEDING IN REM—ABROGATION OF CONTRACT RIGHTS—JURIS-
DICTION—NOTICE SUFFICIENT — DECREE OF CONFIRMATION — COL-
LATERAL ATTACK — BENEFITS — ASSESSMENTS ACCORDING TO —
OWNER OF WATER RIGHT—RES ADJUDICATA—CONSTRUCTIVE SERVICE
—SUFFICIENCY OF—JURISDICTION OF SUBJECT MATTER AND PAR-
TIES—DUE PROCESS OF LAW.

1. An irrigation district organized under the provisions of the
irrigation district act of 1899 (Sess. Laws 1899, p. 408), and acts
amendatory thereof, has power and authority to levy and collect
assessments against the lands within the district according to
the benefits received.

2. Said act provides for notice to be given by publication in
a newspaper of the presentation of the petition for the organiza-
tion of such irrigation district to the board of county commis·
sioners, and of the time of hearing such petition by such board
and for an election to be held for voting on the proposition o
the organization of such district, a notice for bond election, ana
notice of the application to the district court for a judgment or
confirmation confirming all proceedings in relation thereto.

3. The organization of the district and all proceedings in con-
nection therewith, the voting of bonds and other matters, in-
cluding the decree of confirmation by the district court, are
proceedings in rem.

4. Constructive service of the notices required by said act is
sufficient to give each and every person interested in the organ-
ization of such district his day in court, and the court jurisdic-
tion of the person and subject matter.

5. If anyone is dissatisfied with the judgment of confirmation,
he is given, by the terms of said act, the right to appeal to the
supreme court. Under the provisions of said act, all lands within
said district are subject to assessment according to the benefits
received for the payment of the bonded indebtedness of such
district.

6. The board of directors of the district has the authority to
determine whether or not the several tracts of land included

within said district will be benefited by the organization of the district and the purchase or construction of an irrigation system, and anyone dissatisfied therewith may have the action of the board reviewed, as provided by said act.

7. Where a party owns his own water right and would not receive any benefit from the organization of the district, he may, upon proper showing, have .his land excluded from the district and from assessment. *Held,* under the facts of this case, that an opportunity was given the plaintiff to show that his land would receive no benefits, but that he failed to appear and make such showing, and is bound by the action of the board and the decree of confirmation in that regard.

8. *Held,* that this action is a collateral attack upon said judgment of confirmation, and so far as this action is concerned, is *res adjudicata.*

9. In all collateral proceedings, the benefits assessed against land are conclusively presumed to be received, and the assessment is not open to revisal or review.

10. Under the provisions of said act, it was not necessary that personal service be made upon the land owners of the district in order to give the court jurisdiction and power to render a judgment of confirmation valid and binding as against them upon all questions involved in the case.

11. This action does not involve the taking of property without due process of law, nor the violation of the obligations of a contract.

(Syllabus by the court.)

APPEAL from the District Court of the Fifth Judicial District for Bannock County. Hon. Alfred Budge, Judge.

Action against an irrigation district to recover certain assessments alleged to have been paid under protest. Judgment for the defendant. On rehearing, *affirmed.*

W. H. Wilkins, for Appellant.

A party has the right to recover back illegal assessments paid under coercion. (25 Am. & Eng. Ency. of Law, 2d ed., 1240; *Bank of Santa Rosa v. Chalfant,* 52 Cal. 170; *Bank of Mendocino v. Chalfant,* 51 Cal. 369; *Armstrong v. Ogden City,* 12 Utah, 476, 43 Pac. 121; *Gill v. City of Oakland,* 124 Cal. 335, 57 Pac. 152.)

O. E. McCutcheon and Wyman & Wyman, for Respondent.

Plaintiff and his grantor waited until the district was organized and in full operation. His remedy in case of any injury was damages and not injunction. (*Penn. Ins. Co. v. Heiss*, 141 Ill. 35, 33 Am. St. 273, 31 N. E. 138; *Somer v. Metropolitan E. R. R.*, 129 N. Y. 576, 29 N. E. 802, 14 L. R. A. 344; *Kaufman v. Tacoma etc. R. R. Co.*, 11 Wash. 632, 40 Pac. 137; *Silsby v. Tacoma R. R. Co.*, 6 Wash. 295, 32 Pac. 1067; *State v. Superior Court*, 26 Wash. 278, 66 Pac. 385; *Wichita & W. R. Co. v. Fechheimer*, 36 Kan. 45, 12 Pac. 362; *McAulay v. Western Vermont R. R. Co.*, 33 Vt. 311, 78 Am. Dec. 627; *Griffin v. Shreveport R. R. Co.*, 41 La. Ann. 808, 6 So. 624; *Ohio River R. Co., v.* Ward, 35 W. Va. 481, 14 S. E. 142; *Churchill v. Beethe*, 48 Neb. 87, 66 N. W. 992, 35 L. R. A. 442.)

An assessment of benefits is *ipso facto* an equalization. It cannot be otherwise. No one can complain of being assessed the amount he is benefited. No one can complain of being assessed like all others in the same class, and certainly the plaintiff is in the same class as all other owners of water rights.

It would have been impracticable to condemn all these deeded water rights. (*City of South Pasadena v. Land & Water Co.*, 152 Cal. 579, 93 Pac. 490.) .

Hugh E. McElroy, appearing *amicus curiae* on rehearing.

The authorities clearly hold that the only jurisdictional defect that can be considered collaterally is *lack of jurisdiction of the subject matter*. In other words, where the assessment is absolutely void and the court has jurisdiction to review the assessment and confirms it, the assessment is good and cannot be attacked collaterally. (*City of Duluth v. Dibblee*, 62 Minn. 18, 63 N. W. 1117; *Hause v. City of St. Paul*, 94 Minn. 117, 102 N. W. 221; Hamilton's Law of Special Assessments, sec. 633.)

"The city council has jurisdiction to determine the question of benefits, as well as the regularity and validity of the

assessment; and, where the proceedings are regular, and due notice given, the confirmation of the assessment by the council is final.'' (*Wright Seminary v. Tacoma*, 23 Wash. 109, 62 Pac. 444; *New Whatcom v. Bellingham Bay Imp. Co.*, 18 Wash. 181, 51 Pac. 360.)

Where the property is situated within the territorial boundaries and the council or board are authorized to assess benefits, and the formalities prescribed by law have been complied with and a benefit assessed, the assessment cannot be collaterally attacked. (*Stoddard v. Johnson*, 75 Ind. 20; *Ricketts v. Spraker*, 77 Ind. 371; *De Puy v. City of Wabash*, 133 Ind. 336, 32 N. E. 1016; *Boyce v. Tuhey*, 163 Ind. 202, 70 N. E. 531; *Hammond v. People*, 169 Ill. 552, 48 N. E. 573.)

SULLIVAN, C. J.—A rehearing was granted in this case, and counsel have not only argued the case orally, but have filed briefs covering every phase and point in the case. The main question urged on the rehearing is that the power having been granted by the legislature to organize irrigation districts and to levy special assessments, and that power having been duly exercised in the manner prescribed by the statute, and all acts in relation thereto as well as the action of the district in voting bonds, having been confirmed and approved by the district court, the particular assessments here involved are now *res adjudicata*, and cannot be considered or reviewed in this case, as this is a collateral attack upon the judgment of a court of general jurisdiction.

Our former decision was based upon the theory that as the plaintiff owned his own water right by and through said water deed, the irrigation district could not confer any benefits so far as his land was concerned, and that because of the inability of the irrigation district to confer any benefits, there was a lack of jurisdiction to levy said assessments. And the court virtually held that to permit the irrigation district to assess the land of the plaintiff as it had done would be a violation or abrogation of the plaintiff's contract rights under his said deed.

This is an action to recover back money alleged to have been paid as assessments, and paid under protest, and to re-

strain further assessments, and plaintiff prays that his right to 215 inches of water be declared valid and that the title to the same be quieted in him.

The following facts appear from the record: That on September 10, 1892, one Scott, who owned certain land in Bingham county, being the land now owned by appellant and referred to in the complaint, purchased from the Great Western Canal Construction Company for the consideration of $1800 and certain other valuable considerations, a water right of 215 inches, which right was conveyed by said canal company by deed dated September 10, 1892. Said deed contained, among others, the following provisions: "Said second party also hereby further covenants and agrees to pay to said party of the first part, its successors or assigns, in addition to the consideration hereinafter agreed to be paid, an annual rental for the use of water from said canal on said land for irrigation as aforesaid, one dollar per acre for all crops and trees for the number of acres of said land actually irrigated in that year." The said Great Western Canal Construction Company operated said canal until the year 1895, and then sold its right in said canal to the Great Western Canal and Improvement Company. On March 1, 1900, the last-named company sold and conveyed all its right, title and interest in and to said canal and water rights to the New Sweden Irrigation District, an irrigation district organized under the laws of the state of Idaho, the respondent in this action, in consideration of $65,000 in six per cent interest-bearing bonds of said district. It also appears that the proceedings for the organization of the New Sweden Irrigation District and the issue and disposition of said bonds were ratified, approved and confirmed by the district court of the sixth judicial district in and for Bingham county, on December 11, 1900; that respondent took possession of the Great Western canal on March 1, 1900, and has ever since managed and operated the same and has each year delivered water therefrom for the irrigation of the lands of said district, including the lands of plaintiff.

The trial court found that every year since 1892, the several parties so managed and operated said canal, including the

respondent, have delivered to the several occupants of the land of plaintiff, including the plaintiff, for the irrigation of said lands, the full amount of water called for by the said deed to Scott. The court also found that in the year 1900, and each and every year thereafter, the respondent had caused to be made regular assessments upon all the lands of said district, including the lands of the appellant, and made an assessment-roll for the years 1900, 1901, 1902, 1903. Said lands for the years 1900 and 1901 belonged to and were assessed to one John Brand, who was the grantee and successor of said Scott and was the immediate grantor and predecessor of plaintiff. For the years 1902 and 1903, said lands were assessed to the plaintiff. The appellant purchased said lands from said Brand on December 12, 1901. Brand did not pay the assessments for 1900 and 1901. It also appears that the consideration which the appellant paid Brand for said land was $4,250, and that the appellant deducted from said consideration a sufficient sum to pay off and discharge the assessments for 1900 and 1901, and thereafter paid said assessments, and also paid the assessments for 1902 and 1903 before they became due. He paid such assessments under protest, and it appears that the ground of protest in each case was, in substance, that because of rights under said water deed, as the grantee and successor in interest of said Scott, his land could not be lawfully assessed by the respondent irrigation district for any purpose whatever except for appellant's fair share of the cost of maintaining said canal, said grounds being alleged in the complaint.

The trial court found that said assessments for said years were legal and valid, and that the money so paid could not be recovered back by the appellant, and entered judgment accordingly. From that judgment this appeal was taken. The case was submitted to this court on printed briefs and oral argument and our decision was to the effect that the judgment of the lower court must be reversed. A petition for a rehearing was granted and additional briefs were filed by respective counsel and the cause was orally argued by them.

On the argument on rehearing, it was most earnestly contended by counsel for respondent that this action in no manner involved the question of the abrogation of contract rights; that this action was a collateral attack upon the judgment of the district court, in which judgment said court had confirmed all of the acts had and done in relation to the organization of said district, the assessment of benefits to all lands contained therein and in relation to the voting and issuing of the irrigation district bonds which were used in payment for the canals and water rights purchased by said district. It was earnestly contended that the lack of jurisdiction of said district court of the subject matter was the only question that could be considered on this collateral attack of said judgment of confirmation.   The entire argument of counsel for appellant is based upon the theory that because the plaintiff owned a water right, he could in no wise be benefited by the formation of said irrigation district, and for that reason the trial court had no jurisdiction to confirm such assessments as to appellant.   And this court in the original opinion herein agreed with counsel in that contention and held that said assessments were a virtual abrogation of contract rights.   But as we now view the case, it does not involve that question, but involves the question of whether the plaintiff can in this action collaterally attack the organization of said district, said assessments and the decree confirming those acts.

Under our irrigation law as it existed at the time of the organization of this district and the assessments referred to were made, if the land of the plaintiff was properly included in said irrigation district, it was subject to assessment for benefits, provided it received any, whether the owner of said land owned a water right in connection therewith or not; for a person in an irrigation district may receive certain benefits regardless of whether the owner has a water right in connection therewith or not.

Said irrigation act provides the various steps in detail which must be taken for the organization of the district, the voting of bonds, etc., and it is not necessary for us to recite them all here, as all of said acts in regard to the organization

of said district and the voting of bonds, etc., have been confirmed by a judgment of the district court, and no appeal has been taken therefrom. Said act (see Sess. Laws 1899, p. 408) provided for the organization of such district by petition to the board of county commissioners, and provides that such petition shall be presented to the board of county commissioners at its regular meeting, and also provides that a notice must be published at least three weeks before the time at which said petition is to be presented, in some newspaper published in the county, to the effect that such a petition will be presented and anyone interested in said matter may appear and show why his lands should not be included in such district, if he desires to do so. At such meeting, the board has the authority to establish and define the boundaries of the district, and the law provides that no lands which will not, in the judgment of the board, be benefited by irrigation by said system, shall be included within such district. Thereafter the board is required to give notice of an election to be held in such district for the purpose of determining whether or not the same shall be organized under the provisions of said act. Such notice must describe the boundaries of the district, and must contain other matters not necessary to recite here, and be published for at least five weeks prior to such election, in a newspaper published within the county where such district is situated, and no one is competent to vote at said election unless he be a land owner and a resident of the district. Maps and plats of said district are required to be furnished and filed. The board of county commissioners are required to meet within ten days after the returns of said election are received, and canvass the votes thereat and declare the result; and are required to enter an order of the result of the canvass of such votes, and to have a copy of such order duly certified to be immediately filed for record in the office of the county recorder in each county in which any portion of such lands are situated. Said act also provides that no action shall be commenced or maintained or defense made affecting the validity of the organization of such district, unless the same shall have been commenced or made within two years after the making and entering of said order. It also provides that

from the date of the filing of said order, the organization of said district shall be complete, and the officers elected at such election shall be entitled to enter immediately upon the duties of their respective offices. The board of directors so elected are required to meet within thirty days after the organization of the district, and elect a president and appoint a secretary and a treasurer. The board of directors are empowered to institute, maintain and defend any and all actions and proceedings and suits necessary or proper in order to fully carry out the provisions of said act, or to maintain, protect and preserve any and all rights of the district. For the purpose of constructing the necessary irrigating canals and works and acquiring the necessary property and rights thereto, and otherwise carry out the provisions of said act, the board of directors are required to formulate a general plan for such construction and acquisition of property, and shall cause such surveys, examinations and plans to be made as may be necessary to furnish the proper basis of an estimate of the cost of carrying out such plan. All such surveys, examinations, plans, maps, proper field-notes and estimates are required to be made under the direction of an irrigation engineer and must be certified to by him and filed with said board, and the board must submit such maps, plans, etc., to the state engineer for examination and report. The state engineer is required to examine the same and make a written report on the whole subject to the said board. Upon receiving such report, the board of directors is required to proceed to determine the amount of money necessary to be raised, and when that is determined, shall immediately call a special election, at which must be submitted to the electors of such district the question of whether or not the bonds of said district in the amount so determined shall be issued. Notice of such election must be given by posting notices in three public places in each election precinct in said district for at least thirty days, and also by the publication of such notice in some newspaper published in the county where the office of the directors of such district is kept, once a week for at least four successive weeks. Such notice must specify the time of holding the election, the

amount of bonds proposed to be issued, and shall state that the maps and estimates and the report of the state engineer are on file and open to public inspection by the people of the district at the office of said board and at the office of the state engineer in the state capitol. Said election must be held and the result thereof determined and declared as provided by said act. If two-thirds of the votes cast at such election are favorable to the issuance of the bonds, the board of directors shall cause bonds in said amount to be issued. Thereafter the board of directors are required to file in the district court of the county in which the lands of the district, or some portion thereof, are situated, a petition praying in effect that the proceedings aforesaid may be examined, approved and confirmed by the court. The petition must state the facts, showing the proceedings had for the issue and sale of bonds, and shall generally state that the irrigation district was duly organized and the first board of directors elected. The court is required to fix a time for the hearing of such petition, and is required to order the clerk of the court to give and publish a notice of the filing of said petition. The notice must be given and published in the same manner and for the same length of time that the notice of a special election provided for by said act to determine whether the bonds of said district shall be issued is required to be given and published. The notice shall state the time and place fixed for the hearing of the petition and the prayer of the petition, and any person interested in the organization of said district or in the proceedings for the issuance or sale of bonds may, on or before the date fixed for the hearing of said petition, demur to or answer said petition. Any person interested in said district or in the issue and sale of said bonds may appear and contest the confirmation of such proceedings. Upon the hearing of such proceeding, the court has power and jurisdiction to examine and determine the legality and validity of and approve and confirm each and all of the proceedings for the organization of said district under the provisions of said act, from and including the petition for the organization of the district, and all other proceedings which may affect the legal-

ity or validity of the bonds and the order for the sale and the sale thereof. The court in inquiring into the regularity, legality or correctness of such proceedings, must disregard any error or irregularity or omission which does not affect the substantial rights of the parties to said special proceeding, and it may approve and confirm such proceedings in part and disapprove and declare illegal and invalid other and subsequent parts of the proceedings. An appeal may be taken from the judgment entered in said matter, or from an order granting or refusing a new trial.

Thus the law provides a complete system for the organization of such districts and for the confirmation of all proceedings connected therewith by the district court, and provides for four notices to be given to the electors of such district: The first in regard to the presentation of the petition to the board of county commissioners for the organization of said district; the second, for an election to be held voting upon the proposition as to whether such district shall be organized or not; third, a notice for the bond election, and fourth, notice of the application to the district court for a judgment of confirmation, confirming all prior proceedings in relation thereto. The organization and all proceedings under said act, up to and including the confirmation by the district court of all such proceedings, are proceedings *in rem,* and the notices required to be given under the provisions of said act are sufficient to give each and every person interested in the organization of such district his day in court; and if he is not satisfied, he has a right to contest the matter in the district court, and if not satisfied with the judgment of that court, he is given the right of an appeal to the supreme court. Thus are his rights amply protected.

Said act provides that the bonds so issued and the interest thereon shall be paid by revenue derived from the annual assessment upon the land in the district, and that all land in the district should be liable to be assessed according to the benefits received, for the payment thereof. The intention was to have the cost of the irrigation works apportioned or distributed according to the benefits received. The board of

directors were required to cause annual assessments to be made upon the land in the district for that purpose. A date was fixed upon which the secretary of the board must give notice of the time that the board would meet to correct assessments. Here was given an opportunity for anyone aggrieved to appear and have assessments made against him corrected, if he desired to do so.

There is nothing in the record to indicate that the plaintiff or his predecessors in interest ever objected in any manner to any of the proceedings in regard to the organization of the district or assessments made, or to the proceedings before the district court for the confirmation of the organization of said district, or that they took any appeal therefrom. The assessment is based upon the question of benefits, and whether or not the purchase of a system of irrigation works is a benefit to any particular tract of land within the district is a matter, the determination of which is committed to the board of directors, in the first instance, and the land owner, if he is dissatisfied, is given opportunity to further contest such assessment in the court where the assessment is sought to be confirmed, and if the judgment of that court is not satisfactory, he may appeal to the supreme court of this state. The board of directors of the district had authority to determine whether or not plaintiff's land would be benefited by the organization of the district and the purchase of the irrigation system, and the only way appellant can call in question the action of the board as to the assessments made is the method provided by statute. He cannot stand by, refuse to appear, sleep on his rights, as it were, and thereafter in a collateral proceeding maintain that the board had no authority to make such assessment. If the board had jurisdiction to act in the matter, the fact that the board assessed appellant's property when it should not have done so, or assessed it in excess of the actual benefits received, cannot be questioned in this collateral proceeding. If the appellant's predecessor owned his own water right and could not receive any benefits from the organization of said district, he was given ample opportunity to show such facts at the various hearings provided by said law and thus

have his land excluded from the district or from assessment.
This he did not do. The law grants the power to the district
to levy assessments according to the benefits. An opportunity
is given to each owner to make objection to such assessments
and have his land classified in such a way that the assess-
ments, when completed, would be just and equitable. An
opportunity was given to the plaintiff to show that he had a
contract with the predecessors in interest of the district which
the district had assumed, and which it could be compelled to
perform, and thus show that no benefits would be received
if in fact that were true. This, however, he or his grantor
did not do, but made default and the assessment was made
without objection. He thus had his day in court and is bound
by the assessments. If the plaintiff's lands were subject to
assessment according to the benefits (and they were under the
facts of this case), and the district proceeded according to law
in making the assessment, he is bound thereby, and he cannot
re-examine the matter in a collateral attack in an action like
the one at bar. The fact that the district did not condemn
and purchase his water right is not a reason why his land
would not be subject to assessment under the statute, if in
any manner benefited by the organization of the district.

The case of *San Diego v. Linda Vista Irr. Dist.*, 108 Cal.
189, 41 Pac. 291, 35 L. R. A. 33, is an action somewhat like
the one under consideration. It was an action to quiet title
to lands assessed by the irrigation district. The land was
sold for the tax, and it was contended by the plaintiff in that
action that the land was not subject to assessment; that it was
not the character of land upon which an assessment could be
made. The court held adversely to that contention and held
said lands subject to assessment. In the case at bar, the
plaintiff's contention is that the district had no jurisdiction
to assess his property; that his land was not subject to assess-
ment because he owned a water right of his own. If that
were true, he ought to have appeared at the proper time before
the proper board or court and showed that fact, which he
failed to do, and the judgment of the district court confirma-
tory of all the proceedings in regard to the organization of

said district and the issue of the bonds is *res adjudicata* so far as this case is concerned. The board had jurisdiction to make the assessment; the plaintiff's predecessors were served with proper processes to give the board and court jurisdiction of the matter, and the plaintiff cannot collaterally attack said assessment or the said confirmatory judgment of the district court.

Judge Cooley, at page 1258, 2 Cooley on Taxation, says: "In all collateral proceedings the benefits assessed are conclusively presumed to be received, and the assessment is not open to revisal or review." (*Paulson v. Portland,* 16 Or. 450, 19 Pac. 450, 1 L. R. A. 673.)

In *Crall v. Board of Directors of Poso Irr. Dist.,* 87 Cal. 140, 26 Pac. 797, the court had under consideration the constitutionality of the Wright district irrigation act, from which our district irrigation act was taken, and it held that act was constitutional and that the district so organized was a public corporation. It had under consideration, also, an act supplemental to said Wright act, which provided for special proceedings by the directors of such district for the confirmation of the organization of the district and of the issue and sale of bonds, and held that the nature of such proceedings was *in rem* to determine the status of the district and its power to issue valid bonds. In that act, as in the act under consideration, constructive service of process was had by publication and posting, and the court held that such service was sufficient to give the court jurisdiction of the subject matter and the parties, and also held that the court's judgment was valid and binding as against such parties and all the world upon all questions involved in the case until reversed on appeal or set aside by some direct proceeding instituted for that purpose, and that pleading such judgment was a valid plea in bar to an action to enjoin the sale of bonds of the irrigation district by a party constructively served with process in the proceedings *in rem,* and also held that no alleged defect in the organization of the district could be reviewed in that action, which was an action brought for an injunction to restrain the sale of the bonds referred to in that case. The court in that case held that the legislature had power to pass an act to ac-

complish the purposes intended to be accomplished by said Wright irrigation district act. The contention in that case, as in this, was that no process issued in those proceedings was served on him personally, and hence that he was not obliged to appear and his rights were not barred by the judgment, but that he was at liberty to make any attack upon the proceedings in regard to the formation of such district, the issuance of the bonds thereof and the judgment of confirmation, the same as if no judgment had ever been entered. And it was contended in that case, as it is in this, that it would have the effect of depriving the party of his property without due process of law. The court in that case said:

"In our opinion, the contention of appellant cannot be sustained. It was not necessary, we think, that personal service be made upon all or any of the land owners of the district, in order to give the court jurisdiction and power to render a judgment valid and binding as against them and all the world upon all the questions involved in the case. And this view seems to be well supported by the authorities."

Then follows a long citation of authorities in support of the proposition there laid down.

In *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369, the supreme court of the United States had under consideration some of the questions involved in this case, and it was there held that land which can be used beneficially to a certain extent without irrigation may be so improved by it that such land can properly be included in an irrigation district and assessed for the benefit of the artificial irrigation as a public improvement, and that under the Wright irrigation law of California, the board is required to hear the petition for the organization of the district upon a notice and must not include land which will not be benefited; that it necessarily follows that a person interested has a right to appear before the board and contest the facts upon which the petition is based and as to the benefits to any particular tract of land included in the proposed district. In referring to the power of the legislature to constitute taxing districts, the court said:

"It has been held in this court that the legislature has power to fix such a district for itself without any hearing as to the benefits, for the purpose of assessing upon the lands within the district the cost of a local public improvement. The legislature, when it fixes the district itself, is supposed to have made proper inquiry and to have finally and conclusively determined the fact of benefits to the land included in the district, and the citizen has no constitutional right to any other or further hearing upon that question.''

In the case at bar, the legislature authorized the creation of such districts and gave the board the power, in the first instance, to determine the fact of the benefits that would result to the land included in the district, and if any mistake were made by that board, the law provides a method of correcting it by appeal.

In *Rialto Irr. Dist. v. Brandon,* 103 Cal. 384, 37 Pac. 484, the court had under consideration, among other things, the effect of the decree of the court confirming the organization of an irrigation district, and held that a decree confirming the regularity of the proceedings of an organization of an irrigation district is rendered in proceedings *in rem,* had and authorized for the express purpose of fixing the legal status of the corporation, and concludes the whole world upon all questions involved.

In *Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295, this court held the irrigation district act now under consideration constitutional. This case in no manner involves the taking of private property without due process of law, nor the violation of the obligation of a contract. The only question involved under the issues is the validity of certain assessments made against the lands of the plaintiff.

We therefore hold that the conclusion reached in the original opinion in this case must be set aside and annulled, and that the judgment of the district court must be affirmed, and it is so ordered, with costs of this appeal in favor of respondent.

Stewart, J., concurs.

AILSHIE, J., Concurring in Conclusion.—As I read and understand the opinion of the chief justice written on the re-

hearing of this case, it only passes directly on one specific point; namely, that the question as to whether the appellant's lands will be benefited by the proposed plan and system of irrigation is *res adjudicata*. The opinion seems to hold that since the appellant had an opportunity to appear before the board of commissioners and object to the inclusion of his lands within the district, and also had a right to appear before the district court and contest the action of the board of commissioners in including his lands within the district, he has had his day in court, and is now bound by the decision of the commissioners and of the district court thereon. After another examination of this case, I am inclined to agree with that conclusion. I am more particularly influenced to this conclusion by the case of *Fallbrook Irr. Dist. v. Bradley*, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. ed. 369, than by any other case or authority I have examined. The authorities cited in the opinion in that case, and also the cases that have cited, approved and followed that case, while none of them are directly in point on the case at bar, are so nearly parallel in principle and point of reasoning that I am persuaded that they are sufficient authority for holding, under our irrigation law, that the appellant has had his opportunity for a hearing and his day in court, and that the proceedings had in the organization of the district and confirmation by the district court should now have the force and effect of a final judgment. If that be once conceded, then, of course, this proceeding, in so far as it attempts to attack the right of the board of commissioners to include plaintiff's lands within the irrigation district, is a collateral attack and cannot be maintained. The case on rehearing has been presented and likewise considered on an entirely different theory from that considered on the original hearing. The original consideration in this case, as will be disclosed from the opinion filed on that hearing, revolved around the proposition that appellant already had a water right acquired by him through contract and purchase, and that the same had become a vested right which the district had, in effect, abrogated by assessing his lands for another and like water right under the district system. The opinion on rehearing seems to disclaim any such effect, and to hold that he still has all the rights and

privileges under his original contract that he ever had, and that they are in no wise affected by the inclusion of his lands within the district and their assessment for such benefits as may be received. I gather this conclusion from various statements contained in the opinion, and especially from the following:

"And this court in the original opinion herein agreed with counsel in that contention and held that said assessments were a virtual abrogation of contract rights. But as we now view the case, it does not involve that question, but involves the question of whether the plaintiff can in this action collaterally attack the organization of said district, said assessments and the decree confirming those acts."

In view of the fact that the original opinion deals with the case from an entirely different view point from that covered by the opinion on rehearing, and that the original opinion received the unanimous approval of the bench and will stand as the law of the case, except in so far as it is specifically disapproved by the latter opinion, I desire at this time to indicate specifically the grounds upon which I concur in the latter, and such portion, if any, of the original opinion as I am now in accord with. I think the court owes it to the bench and bar of the state to be more specific in this matter. I am now of the opinion that this court was in error when it held in the original opinion that the New Sweden Irrigation District had never acquired jurisdiction to levy and collect assessments in any amount against appellant's land. That proposition, and such portions of the opinion as revolve about and support it, are not in accord with my present view of the law of this case. In other respects I still adhere to the principles as announced in that opinion.

It was assumed at the time of the previous decision, without being in any way mooted or decided, that under the California authorities, from which state our irrigation law was copied, the determination of the board of commissioners that a specific tract of land would be benefited by the formation of the district and its consequent inclusion within the district was final and conclusive and not subject to review on appeal

or otherwise.   (*Board of Directors v. Tregea,* 88 Cal. 354, 26
Pac. 237; *Fallbrook Irr. Dist. v. Bradley, supra.*)   It was
considered, therefore, that the action of the district in the case
at bar amounted, in substance and effect, to the "taking" of
appellant's property.   If it be once conceded, or the con-
clusion be arrived at, that any of appellant's property has
been *taken* within the meaning of the constitution and statute,
then, of course, the "taking" has not been in accordance with
and by due process of law as pointed out by statute to be
pursued in condemnation.   I gather, however, from the present
opinion that the writer does not consider the action of the
board final and conclusive, but rather holds that it is subject
to review on appeal.   I am especially led to this conclusion
from the following sentence:

"The assessment is based upon the amount of benefits, and
whether or not the purchase of a system of irrigation works
is a benefit to any particular tract of land within the district,
is a matter, the determination of which is committed to the
board of directors, in the first instance, and the land owner,
if he is dissatisfied, is given opportunity to further contest
said assessment in the court where the assessment is sought
to be confirmed, and if the judgment of that court is not
satisfactory, he may appeal to the supreme court of this
state."

It occurs to me, however, that the distinction should be
clearly maintained at all times between the organization of the
district and the levy of annual assessments upon the lands
within the district, for the payment of the bonds and other
expenses.   By sec. 2 of the act (Sess. Laws, 1899, p. 408) the
commissioners, by making an order for the organization of a
district and defining its boundaries, thereby determine, as a
matter of fact, that all the land so included will be "bene-
fited by irrigation by said system," and it is made their
specific duty to exclude all lands "which will not, in the
judgment of such board, be benefited by irrigation by said
system."   This is the first order made in the organization of
a district, and is a determination in the very inception of its
organization that all the lands within its boundaries will be

benefited *in some measure* by the objects and purposes of the organization. The specific assessment which is made annually is not made ordinarily until after bonds have been voted and issued, and that was the fact in this case. The annual assessment, the specific amount in which a tract of land is to be benefited by the system, is never involved in the hearing before the district court on confirmation of the proceedings in organizing the district and issuing bonds. I would not want at this time to commit myself on the proposition as to what, if any, relief a land owner has against an exorbitant, unreasonable or excessive annual assessment made against his land; nor do I express any opinion as to the finality of the order of the board of commissioners in determining that any specific tract of land included within the district will receive benefits of *some character or degree* by reason of the organization of the district and construction of the system.

As to the rights of the appellant in his water contract, I have no doubt, and that they cannot be summarily taken away from him or the contract abrogated, I am equally clear. I understand from the opinion on rehearing that it is admitted that if appellant had appeared before the board of commissioners and shown that he had a water right which entitled him to all the water he needed or could use on his land, that then the board would have had no right to include his lands within the district. The following sentence from the opinion indicates that view:

"An opportunity was given to the plaintiff to show that he had a contract with the predecessors in interest of the district which the district had assumed, and which it could be compelled to perform and thus show that no benefits would be received if in fact that were true. This, however, he or his grantor did not do, but made default and the assessment was made without objection. He thus had his day in court and is bound by the assessments."

It is suggested, however, by the opinion, that although a land owner might own a water right, still he might be benefited in some measure by being included within an irrigation district, for the reason, I presume, that he might be able to secure better service or more water or something of

the kind. I think that proposition is correct; but the statement is misleading in the present case, for the reason that the record affirmatively shows that the appellant had a sufficient water right for all of his lands and was receiving full and satisfactory service, and that he has received no other different or better service from the irrigation district. Under such circumstances it is clearly apparent that there would be no basis for including such lands within the district or levying an assessment against them.

On the other hand, we are not advised as to what kind of showing was made before the board of commissioners at the time they made the order including this land within the district. For the purposes of this case we must assume that a satisfactory showing was made before the board that appellant's land would be benefited. The theory and principle upon which I concur in an affirmance of the judgment of the trial court in this case is that the appellant had the right and opportunity of appearing before the board of commissioners and making a showing and resisting the inclusion of his lands within the district, and that he has never at any time made a direct attack upon the action of the board of commissioners or of the district, nor of the judgment of the district court in confirming the organization of the district and proceedings subsequent thereto. Of course it may be said that the appellant has never had any complaint to make against the organization of the district itself but rather against the inclusion of his lands within the district and their assessment for benefits.

I have no doubt but that it was the legal duty of the district in the first place to either exclude this man's land from the district, on a showing that he had an adequate water right, or purchase or condemn his right as indicated in the original opinion. On the other hand, I am of the opinion that he has had the opportunity of having his day in court and has not availed himself of it, and that it is now too late for him to collaterally attack proceedings that should be viewed as in the nature of a final judgment. He should have entered an appearance as a party to the proceedings at the proper time, and in the proper forum.